TITUS' ADMINISTRATOR *vs.* TITUS and others.

1. The rule with regard to bequests made in the form of a general legacy, and of pure bounty, where there are no expressions in the will, or inferences to be drawn therefrom, manifesting an intention to give them priority, is that in the event of a deficiency to pay them in full, they shall abate ratably.

2. The presumption in such cases is, that the testator intended that all the legacies should be paid equally. Such presumption of intended equality will not be repelled by any ambiguous expressions in the will, but must be allowed to prevail, unless the will contains unequivocal evidence of the testator's intention to give some of the legatees a preference in case the fund should be found insufficient to pay all.

3. There are exceptions to the rule, but the burden of proving that a legatee is entitled to priority is upon the party seeking it, and the proof must be clear and conclusive.

4. Neither relationship of certain legatees to the testator, nor a provision against lapse as to their legacies, nor a direction that all the legacies shall be paid "in the order in which they are stated in the will, and out of the first

moneys that shall come into the executor's hands, after payment of debts and funeral expenses," where the testator contemplated that there would be a residue after payment of all the legacies in full, constitute any ground for preference.

Bill for relief.   On final hearing, on bill and answers.

*Mr. E. T. Green,* for the administrator.

*Mr. J. C. Potts,* and *Mr. C. S. Green,* for legatees claiming priority.

*Mr. J. Wilson,* for the other legatees.

THE CHANCELLOR.

Liscomb R. Titus, late of the city of Trenton, by his last will and testament, dated February 10th, 1869, directed payment of his debts and funeral expenses, and empowered his executor to sell all his real and personal property, and until sale, to rent the former, and to dispose of the rents, issues and profits thereof as part of his estate, pursuant to the provisions of the will.   The will then proceeds as follows :

"I give and bequeath to the persons hereinafter named, the following sums of money, respectively—that is to say :

"To Nathaniel H. Titus, the sum of $3000 ; to Benjamin W. Titus, the sum of $3000 ; to Eliza Ann Drake, wife of Lewis Drake, the sum of $3000; to Louise Drake, wife of Bayard Drake, the sum of $3000 ; to the children of Mary Ann Updyke, deceased, (wife of Williamson Uydyke,) who shall be living at the time of my decease, the sum of $3000, to be divided among them equally, share and share alike ; to the children of Andrew R. Titus, born of the body of Mary Potts, deceased, his first wife, who shall be living at the time of my decease, the sum of $3000, to be divided among them equally, share and share alike ; to the children of David L. Titus, deceased, to wit, James D. Titus, Andrew R. Titus, Joseph V. Titus and Charity West, wife of Thomas H. West,

the sum of $3000, to be divided among them equally, share and share alike; and it is my will, that if either of the persons in this clause mentioned, die before my decease, the share of such person so dying shall vest in, and belong to, his or her heirs-at-law.

" To Anna Lee Hoagland, the sum of $3500; to Sarah C. Connard, the sum of $3500; to Liscomb J. Titus, son of Nathaniel H. Titus, the sum of $500; to Harman H. Titus, son of Randolph Titus, deceased, the sum of $500; to Benjamin Titus, son of Randolph Titus, deceased, the sum of $1000; to Randolph Titus, son of Randolph Titus, deceased, the sum of $500; to Jane Van Middlesworth, daughter of Randolph Titus, deceased, the sum of $500; to Adah Stryker, wife of Jacob Stryker, the sum of $500; to Lucy Errickson, the sum of $500; to Amanda Baylis, the sum of $500; to C. Stryker Titus, the sum of $100; to Ridgway Hoagland, of the county of Somerset, in the State of New Jersey, the sum of $300; to Lizzie Titus, daughter of C. Stryker Titus, the sum of $500; to Marion Hoagland, daughter of C. S. Hoagland, the sum of $300; to Rachel S. Hoagland, daughter of C. S. Hoagland, the sum of $300; to Randolph T. Hoagland, son of C. S. Hoagland, the sum of $300; to Jennie Hoagland, daughter of C. S. Hoagland, the sum of $300; to Liscomb T. Cook, the sum of $100; to John B. Anderson, the sum of $100.

" And it is my will, and I do hereby order and direct my executor to pay the foregoing bequests, in the order in which they are above stated, and out of the first moneys that shall come into his hands, after paying my debts and funeral expenses.

" If any of the devisees or legatees above named shall depart this life before my decease, it is my will, (unless hereinbefore otherwise specified,) that the devise or legacy to such sharer shall be null and void, and such devise or legacy shall fall into and become part of the residuum of my estate.

" All the rest and residue of my estate, both real and personal,

not hereinbefore disposed of, wheresoever the same may be, and of whatsoever the same shall consist, I give, devise and bequeath to Mary Ann Hoagland, wife of Christopher S. Hoagland, and to her heirs forever; to be, and forever to remain, free from the debts, control or engagements of her present husband, or of any husband she may hereafter have."

Of the above named persons, Nathaniel H. Titus, Benjamin W. Titus, Andrew R. Titus, and David L. Titus were the testator's brothers; Eliza Ann Drake and Louisa Drake were his sisters; Jane Van Middlesworth and Adah Stryker were his nieces; Liscomb J. Titus, Harman H. Titus, Benjamin Titus, Randolph Titus, and C. Stryker Titus were his nephews; Anna Lee Hoagland, Lizzie Titus, Marion Hoagland, Rachel S. Hoagland, and Jennie Hoagland were his grand-nieces; Ridgway Hoagland and Randolph S. Hoagland were his grand-nephews; Sarah C. Connard was his housekeeper; Lucy Errickson and Amanda Baylis were persons living in his family, and Liscomb T. Cook and John B. Anderson were his friends.

The testator's estate, after payment of his debts and funeral expenses, amounted to about $19,000. The general legacies above mentioned, amount to $33,800. Those which the will provides shall not lapse, amount to $20,000.

The administrator, *cum testamento annexo*, by his bill, seeks the direction of the court as to his duty in paying the legacies.

The question presented is, whether the legacies to Nathaniel H. Titus, Benjamin W. Titus, Eliza Ann Drake, Louisa Drake, the children of Mary Ann Updike, certain children of Andrew R. Titus, and the children of David L. Titus, deceased, abate proportionably, or are to be paid in preference to the other legacies. The rule is that, where the bequests are made in the form of a general legacy, and are pure bounty, and there are no expressions in, or inference to be drawn from the will, manifesting an intention to give them priority, they will, in case of deficiency to pay them in full, abate ratably; and this, on the principle that equality is equity. The legacies under consideration are all pure bounty. The

legatees are, the testator's collateral relatives, two of his friends, who were not related to him, his housekeeper, and two persons who lived in his family. The will makes no mention of the testator's relationship to any of the legatees ; nor does it, directly or indirectly, give or afford any reason for any of the legacies. The claim to preference is based upon the near relationship of some of the legatees to the testator, for whom it is advanced that four of them are his brothers and sisters ; the fact that the will provides that those legacies shall not lapse, while the others are to lapse if the legatees predecease the testator, and on the direction that all the legacies shall be paid *in the order in which they are stated in the will, and out of the first moneys that shall come into the executor's hands after payment of debts and funeral expenses.* It will be observed that some of the legatees against whom discrimination is sought, were of the same degree of relationship to the testator as some of those for whom it is claimed. Of the latter, some are the children of the testator's brothers and sister. Of the former, five are his nephews, and two his nieces. The legacies to them amount to $4500, of which $2500 are given to persons designated in the will as the children of Randolph Titus, deceased. The last named person was the testator's brother. I am, therefore, unable to conclude from the fact of relationship that the testator, if he had contemplated that there would be a deficiency of assets to pay all the legacies he had given, would have expressed his preference in favor of some of these legatees by whom priority is claimed, to the exclusion of the others. Among the latter were his grand-niece and his housekeeper, to each of whom he has seen fit to give a legacy greater in amount than that which is given to any of those for whom preference is now claimed. As before remarked, to the children of one of his deceased brothers he has given legacies to the amount of $4500, more than twice as much as he gave to the children of his brother Andrew, and $1500 more than he gave to either the children of his sister, Mary Ann Updike, or the children of his brother David. To each of two persons living in his

household, Lucy Errickson and Amanda Baylis, he gave $500. I am inclined to think that, had he contemplated a deficiency, he would have retained some of these persons, at least, among the sure recipients of his bounty, and I see no reason for saying that he would not have retained them all.

Nor is the provision against lapse, evidence of his intention to give a preference. It is evidence only of his intention as to the destination of those legacies. The ground on which the claim to priority is mainly rested, is the provision for payment of the legacies in the order in which they are stated in the will, out of the first moneys that should come into the hands of the executor, after payment of debts and funeral expenses. The testator clearly did not contemplate a deficiency of assets to pay all the legacies in full, for he expressly bequeathed the residue *not therein before disposed of.* The provision under consideration was intended to secure as speedy payment of all the legacies as might be practicable; hence the direction to pay them out of the first moneys which should come to the executor's hands after payment of debts and funeral expenses. It was, indeed, also designed to secure the order of payment, but it was on the supposition, and in the manifest expectation, that there would be enough to pay all and to spare, and that fact deprives the direction of all significance in the consideration of the question before me. By it, the testator intended merely a priority of administration, or in the realization and application of assets. In the absence of any indication to the contrary, the testator would be presumed to have considered that his estate would be sufficient to pay all the legacies he has given. If so, he cannot be presumed to have provided against a contingency which he never contemplated. A sufficient reason for the direction under consideration may be found, without having recourse to the presumption of an intention to prefer one legacy to another in case of deficiency. The age or necessities of the legatees first named, would constitute a good and sufficient reason for directing that they be first paid out of the money first received. It is noteworthy, that the direction to pay out of the first

moneys received, applies to all the legacies. There are exceptions to the general rule of abatement above stated, but the burden of proving that he is entitled to priority is upon the party seeking it, and the proof must be clear and conclusive. Wills containing expressions, equivalent or similar to those in that under consideration, have been passed upon by the courts, and the general legacies thereby given have been decreed to abate proportionably, notwithstanding such directions.

In *Brown* v. *Allen*, 2 *Vern.* 31, Lord Nottingham held, that when there are several general legacies, they abate ratably in case of deficiency of assets, notwithstanding the fact that one of them is directed to be paid in the first place. In *Blower* v. *Morret*, 2 *Ves.*, *sen.*, 420, lands were devised to trustees to be sold for payment of debts, legacies and funeral expenses. The testator afterwards gave to his wife a general legacy of £500, "to be paid her immediately after" his "decease, out of the first moneys belonging to" him "that should be got in after" his "death." Lord Hardwicke held that the provision for immediate payment out of the first moneys that could be got in, would not take the legacy out of the rule as to abatement, and give it a preference. In *Beeston* v. *Booth*, 4 *Madd.* 161, the testator directed his executors and trustees, after payment of his debts and funeral expenses, in the next place, to pay three pecuniary legacies, and afterwards to raise and set apart three other legacies. It was held by Sir John Leach, that there was no priority between the two sets of legacies, but in case of deficiency of assets the legacies should abate ratably. In *Thwaites* v. *Foreman*, 1 *Coll.* 409, where a testator directed his trustees to stand possessed of the residue of his estate upon trust, *in the first place*, to pay what might be due under a covenant he had made, *and then*, upon trust to set apart and invest a sufficient sum to satisfy certain annuities, which he bequeathed by his will; *and in the next place after making such investment as aforesaid*, upon trust to pay the several pecuniary legacies bequeathed by his will: the assets proving insufficient to pay all the legacies and annuities in full,

it was held by Sir J. L. Knight Bruce, V. C., that the annuitants had no priority over the legatees in respect of payment.  In *Ashburnham* v. *Ashburnham*, 16 *Sim*. 186, the testator gave legacies to different persons, and an annuity for the personal maintenance and support of his brother, and directed payment of the latter to commence on the first half yearly day after his death, and the legacies to be paid at the expiration of two years after that event, or as much sooner as the circumstances of his estate would permit, but without interest in the meantime.  The testator's property was insufficient to pay the legacies and annuity in full.  It was held by Sir Launcelot Shadwell, V. C., that the annuity was not entitled to priority over the legacies, but must abate proportionably with them.  In *Lord Dunboyne* v. *Brandner*, 14 *Beav.* 313, legacies were directed to be invested, and to become payable and be paid in a certain order, with interest from the testator's death.  The assets were deficient.  The court, (Sir John Romilly, M. R.,) in the context, held that the legacies were payable, *pari passu.*  See also *Miller* v. *Huddlestone*, 3 *Mac. & G.* 513.

The cases relied on by the counsel of the legatees for whom priority is claimed, are not in contrariety to these above cited.  *Attorney General* v. *Robins*, 2 *P. W.* 23, was a case where a testator, by his will, gave several legacies, and afterwards in the will, said he apprehended there would be a considerable surplus of his personal estate, beyond what he had before given away in legacies, for which reason he gave several other legacies.  It was held that the legacies in the former part of the will should have preference in case of deficiency.  The reason given for that decision was, that the legacies given in the latter part of the will were given on the presumption that there would be a surplus, and there happening to be no surplus, the former legacies were entitled to payment to the exclusion of the others.  In *Brown* v. *Brown*, 1 *Keen* 275, the testator gave £1000 to trustees, upon trust, to pay the interest to his wife during her life ; and he declared his will to be, that after her decease the £1000 should become

part of his personal estate, and applicable to the payment of the trusts or legacies given by the will. He also gave a legacy of £500 to N. M. and his wife, in nearly the same words. Lord Langdale, M. R., held that a priority was given to these two legacies, on the ground that the principal of these legacies was, after the death of the legatees to whom the interest thereof was given for life, applicable, by the terms of the will, to the payment of the other legacies given by the will; that the testator could not be reasonably presumed to have contemplated the death of the three legatees, to whom the interest of the respective legacies of £1000 and £500 was given, within a year from his death; that there was nothing in the language of the will to afford ground for the argument that he intended to provide for such a possibility, and that, therefore, there was no way in which effect could be given to the words used by the testator, but by giving priority to those two legacies.

In *Shepherd* v. *Guernsey*, 9 *Paige* 357, Chancellor Walworth states the law on this subject as follows: "In the common case of a direction in the will of a testator, to pay several pecuniary legacies out of his estate, if it happens that the fund provided for the payment of such legacies is not sufficient to satisfy all, the legacies must abate ratably. And the executor is not at liberty to pay the first legatee named in the will, in full, although the payment of that legacy was first directed by the testator. The presumption in such cases is, that the testator intended that all the legatees should be paid equally. Such presumption of intended equality will not be repelled by any ambiguous expressions in the will, but must be allowed to prevail, unless the will contains unequivocal evidence of the testator's intention to give some of the legatees a preference, in case the fund should be found insufficient to pay all. See also 1 *Roper on Legacies* 421, 424, 425; 2 *Redf. on Wills* 551, 552, 553; *Duncan* v. *Alt*, 3 *Penn.* 382.

The administrator *cum testamento annexo*, will be directed to pay all the legacies ratably.