CHARLES MECUM, executor, &c.,

*v.*

H. CLAY STOUGHTON et al.

[Submitted February 17th, 1913.   Determined February 22d, 1913.]

1. The use of the words "my stock" or "stock owned by me," and similar language, sufficiently individuates the stock then owned by a testator to render a legacy thereof specific.

2. A joint will executed by two sisters provided that the survivor should take for life the entire estate of the one dying first, with power to dispose of it, and, after the death of the survivor, bequeathed stock of a corporation in the following form: "We give and bequeath unto  *  *  * forty shares of the capital stock of the Lehigh Valley Railroad Company." At the date of the will testatrices owned in the aggregate exactly the number of shares of stock in that corporation which were given by the will, but, at the death of the surviving testatrix, some of it had been sold. Other bequests in the will also included corporate stocks and chattels equal to the exact amount owned at the time the will was executed.— *Held,* in view of the survivor's rights of disposition, that the legacies of the railroad stock were general; the mere fact that they owned the exact number of shares bequeathed not making them specific.

3. In determining whether legacies of stock are general or specific, the inquiry is not whether testator may not have intended to give the specific shares then owned, but whether it clearly appears that he did so intend, for a clear intention upon the part of a testator must appear in order to make a legacy specific.

4. An intention to make a legacy of stock specific necessarily includes an intent to render it subject to ademption in the event of the specific security being converted to cash.

Final hearing on bill for construction of will.

The bill is filed for the construction of a joint will made by two sisters.   The will provides that in the event of either dying before the other the survivor shall take for life the entire estate of the one dying first, with power to dispose of it.   It then provides that after the death of the survivor the property not then disposed of shall be disposed of in the manner therein stated. Both testatrices are now deceased.   The will contains a number

of bequests of money to charities and to relatives and a number of bequests of stocks of corporations to various legatees and also bequests of household goods, and concludes with a residuary bequest and devise to certain persons therein named.

At the hearing all questions were disposed of except the single question whether certain bequests of capital stock of the Lehigh Valley Railroad Company are general or specific legacies. There are several bequests of stock of that company, but all are in substantially the following form: "We give and bequeath unto * * * , forty shares of the capital stock of the Lehigh Valley Railroad Co."

The doubts which are suggested touching these bequests of stock of the Lehigh Valley Railroad Company arise from the circumstance that at the date of the will testatrices owned in the aggregate exactly the number of shares of stock of that company which are given by the will; but at the death of the surviving testatrix some of that stock had been sold.

*Mr. Lewis Starr,* for the complainant.

*Messrs. J. Forman Sinnickson* and *John G. Horner,* for the defendants.

LEAMING, V. C.

It will be observed that the legacies in question are in form general; the single inquiry is whether they must be regarded as specific, and subject to ademption, from the circumstance that at the date of the will testatrices owned the exact number of shares of stock of the Lehigh Valley Railroad Company that are, in the aggregate, bequeathed by the will.

There are a few adjudicated cases to the effect that the circumstance named is a sufficient indication of a testator's intent to bequeath the very shares owned by him at the date of the will to justify a court in treating such a bequest as specific, notwithstanding the fact that the bequest is, in form, general; but the great preponderance of authority is undoubtedly to the contrary.

The rule, as stated by Professor Pomeroy in *3 Pom. Eq. Jur.* § *1132,* is as follows:

"A gift of any chattel or chattels—as a white horse, or furniture, or goods, or of any kind of securities, such as shares in any stock, or government bonds, and the like—*may* be general, and *will* be general, even though the testator owns at the time articles of the same kind, or even owns an article precisely answering to the description, unless the language of the bequest describes and certainly points out as the thing given some identical article, horse, furniture, goods, or some identical shares of stocks, bonds, or fund, existing as a part of testator's estate."

In note 2 to section 1130 touching corporate stock the same author says:

"Where the bequest is merely descriptive generally of the stock, shares, etc., given, the legacy is not specific, although the testator may at the time own stock answering the description, and even may own the exact number of shares given, *e. g.,* as where he gives so much stock, or so many shares, or the like, not using additional words pointing to any identical shares, as 'my' stock, or the stock which 'I now possess,' etc."

This rule, as stated in *18 Am. & Eng. Encycl. L. (2d ed.) 713,* is as follows:

"When bonds, or other securities are disposed of by will, but it does not designate them as comprising a part of the testator's estate, and the legacy may be satisfied by delivering to the legatee any securities of the kind and the value or amount specified, it is a general legacy, though the testator owned securities of the kind specified, and corresponding exactly to the number of shares or amounts bequeathed."

The same rule is defined in *40 Cyc. 1875,* as follows:

"Where a testator makes bequests of stocks, bonds, or other securities but the will does not designate them as composing part of testator's estate and the legacy may be satisfied by delivering to the legatee any securities of the kind and value or amount specified, the legacy should, according to a preponderance of authority, be regarded as general even though the testator owned securities of the kind specified, corresponding to the number of shares or amount bequeathed."

The rule is defined in *Rop. Leg.* \*205, as follows:

"But it seems to be settled that mere possession by the testator, at the date of his will, of stock or securities of equal or larger amount than the bequest, will not (without words of reference, or an intention appearing upon the will that he meant the *identical* stock of which he was possessed) make such bequest specific."

See, also, to the same effect note to *Ashburner* v. *Macguire,* in *2 White & T. Lead. Cas.* \*258, \*259. Note to *Snyder's Estate,* in *10 Am. & Eng. Anno. Cas. 488.* There are, however, as already suggested, a few reported cases which are not in harmony with the generally accepted rule above stated; in these cases—which I regard as exceptional—it has been held that where at the date of the will testator owned stock of the kind and of the exact amount specified in the bequest, that circumstance should be regarded as sufficient to establish an intent upon the part of testator to bequeath that specific stock and thus render the legacy specific and subject to ademption in the event of testator subsequently disposing of a part or all of such stock. That view is adopted in *Jeffreys* v. *Jeffreys, 3 Atk. 120.* That was a decision rendered by the master of the rolls in the year 1743, and the decree appears to have been subsequently affirmed by Lord Hardwicke. That decision is based upon the following distinction which I have not seen elsewhere recognized: "Corn or sheep are in their nature perishable, but when a man buys stock, he buys it to have continuance as long as he lives, and therefore when he devises any quantity of corn or sheep, though he has such quantity at the time of making the will, yet he cannot, from the nature of the thing, be taken to intend that the individual quantity of corn or sheep will go to his legatee; but when he devises any quantity of stock, which in its nature is durable, and may continue in the same state to the time of his death, if he has the stock at the time, he cannot but be taken to intend that very individual stock, and if so, the sale of it is undoubtedly an ademption *pro tanto.*" I do not find the rule laid down in *Jeffreys* v. *Jeffreys* followed in any subsequent English case, but in *Robinson* v. *Addison,* decided in the year 1840, *2 Beav. 515,* the opposite view is adopted. In that case testator at the date of his will owned fifteen and one-half shares of stock in a certain company; he bequeathed five and one-half shares of stock of that company to A, five shares to B, and five shares to C. The legacies were held general. The opinion says: "Various arguments depending on the general scope and effect of the will were used for the purpose of showing that the testator, in giving the precise number of shares which he possessed, must have had those

shares in his contemplation, and none other, and, consequently, must have meant specific gifts of them. * * * It was further urged that the shares of this canal were so rarely brought to market that they could not be considered as transferable or purchasable for money, and could not be considered as gifts of particular things which the executors could purchase out of the assets. It is, however, clear that the testator, if he had meant to give only the shares which he had, might have designated them as 'his'—that the mere circumstance of the testator having, at the date of his will, a particular property of equal amount to the bequests of the like property which he has given without designating it as the same, is not a ground upon which the court can conclude that the legacies are specific." In *White* v. *Winchester, 6 Pick. 47,* it is held that the circumstance that testator owned, at the date of the will, the exact number of shares of stock of the kind which he bequeathed is sufficient to justify the conclusion that he intended to give that specific stock. The opinion of the court, in that case, says: "The general rule is, that if stock be bequeathed, and the testator owns the stock described, at the time of making the will, the bequest must be considered specific. *Selwood* v. *Mildmay, 3 Ves. 310.*" This is clearly an inaccurate or incomplete statement of the law. In the very case cited to sustain the statement (*Selwood* v. *Mildmay*) the bequest was "my stock in the 4 per cent. annuities of the Bank of England," and in the several portions limited over testator uniformly referred to the stock as *his* four per cent. stock. The opinion of the court, in *White* v. *Winchester,* after stating as above quoted, and citing *Selwood* v. *Mildmay,* proceeds to state the facts upon which *Jeffreys* v. *Jeffreys, supra,* was decided and adopts the views of that case. In a subsequent Massachusetts case (*Johnson* v. *Gass, 128 Mass. 433*) testator owned stock of the kind bequeathed, but owned more shares than the number of shares bequeathed. That was held to be a general devise. The same has been held in *Blair* v. *Scribner, 67 N. J. Eq. (1 Robb.) 583.* In *Waters* v. *Hatch, 181 Mo. 262,* it is also held that a bequest of certain number of shares of stock in a certain company is specific if in fact testator then owned that exact number of shares in that company. No discussion of the subject is con-

tained in the decision, and no authorities are cited except the definition given of a specific legacy in *18 Am. & Eng. Encycl. L. 714.* The only other case which has been brought to my attention adopting the view stated in *Jeffreys* v. *Jeffreys, supra,* is *In re Martin, 25 R. I. 1.* That case concedes, however, that a preponderance of authorities is against the view there adopted.

On the whole, it must be said that the views entertained in the four cases above reviewed (*Jeffreys* v. *Jeffreys, White* v. *Winchester, Waters* v. *Hatch* and *In re Martin*), to the effect that where a bequest of stock is general in form, it will be regarded as specific from the single circumstance that testator at the time owned the exact number and kind of shares bequeathed, finds but feeble support in the adjudicated cases, and that the great preponderance of authority and generally accepted view is to the contrary.

But for the accepted view that the use of the words "my stock," or "stock owned by me," and similar language, sufficiently individuates the stock then owned by a testator to render the legacy specific, great hesitancy might well be exercised in treating even such a legacy specific when shares of a certain stock issue are given to several persons by separate and distinct bequests and the aggregate number or amount of shares given exactly equal the amount then owned by testator, and testator subsequently parts with a part of the stock. If a testator owns three shares of stock in a certain company and bequeathes to A one share of "my" stock in that company, and by a distinct but similarly framed bequest gives two shares of "my" stock in the company to B, it is obvious that neither of the legacies can be regarded as specific in determining which particular share is intended for A, or which two shares are intended for B. That would be wholly immaterial but for the principle of ademption which is inseparably connected with and forms an integral part of all specific legacies; the intention to make the legacy specific must include the intention to render the legacy subject to ademption. Should testator, in the case supposed, subsequently part with one share of the stock so bequeathed, it will be found that at the date of his death—the time when the will not only actually takes effect, but also the time at which and with reference to

which the testator intends that the will shall take effect—he owns but two shares. To treat these two legacies as specific under the circumstances stated, it must be assumed that testator intended at his decease to reduce the bequests to both A and B in such manner that each should specifically receive impossible fractional shares of stock. Where such a bequest is made to a single legatee, it may well be regarded as specific; but when made to several independent legatees in such manner that it cannot be determined which specific shares are intended for each of the several legatees, it is difficult to refrain from doubting the soundness of the conclusion that testator can in such case be said to have clearly intended the several legacies as specific.

I am convinced that the legacies here in question must be regarded as general and not specific legacies unless some additional circumstances can be found which adequately disclose a contrary intent upon the part of testators. An additional circumstance here urged is that other bequests in the will here in question also included corporate stocks and chattels which were, in amount, the exact amounts owned by testatrices at the time the will was executed. If, in a single bequest of stock, in form general, the circumstance that testator at the time owned stock of the kind and in the exact amount named is inadequate to justify the conclusion of an intent to make the legacy specific, the additional circumstance that a similar condition existed touching other bequests of other stock or chattels must be regarded as in like manner inconclusive. The inquiry is not whether testator may not have intended to give the specific shares then owned, but is whether it clearly appears that testator did so intend, for it must constantly be borne in mind that a clear intention upon the part of a testator must appear in order to make a legacy specific. This latter rule of construction is universally recognized and is specifically laid down by our court of last resort in *Blair* v. *Scribner, 67 N. J. Eq. (1 Robb.) 583, 588.*

Another circumstance peculiarly applicable to this case may be appropriately referred to. As already stated, the will here in question is a joint will of two sisters. It gives to the survivor for life the unrestricted use and right of disposition of the entire estate of the one dying first, and is the joint will of the two

touching the entire estate of both, as that estate may be found to exist at the date of the death of the survivor. The several bequests contained in the will express the joint intent of the two minds, as that intent existed when the will was executed. In addition to a great number of money bequests the will contains a number of bequests of various corporate stocks, all general in form, but in the aggregate amounts corresponding to shares then owned. It thus becomes apparent that if these several bequests of corporate stock are to be deemed specific legacies, it became impossible for the surviving sister to convert a share of stock into cash without thereby reducing the legacies of all persons to whom stock of that kind was given and correspondingly increasing the bequest to the residuary legatees. While the will clearly gives to the survivor the unrestricted right to convert any asset of the estate into cash, it is extremely difficult to accept the conclusion that there was a mutual intent to render the free exercise of that right by the survivor impossible without thereby destroying the measure of bounty to the several legatees which the united judgment of the two had theretofore determined upon. If an intent to make a legacy specific is to be ascertained, that intent necessary includes an intent to render the bequest subject to ademption in the event of the specific security being converted into cash. I do not attribute to this circumstance great weight, because it was in the power of the survivor to prevent ademption by codicils to the will; but I am unable to believe that it was the mutual intent of these testatrices in making these bequests to render them subject to ademption.

I find no other provision of the will or circumstance surrounding its execution which can be properly said to afford assistance in the ascertainment of testator's intention touching the legacies here in question. It is urged that the introductory paragraphs of the will indicate an intention of testatrices to dispose of all of their estate, and that these clauses should be given the force of making the legacies here in question read "my stock" or "stock owned by me." I am unable to adopt that view.

I will advise a decree in accordance with the views herein expressed.