Julia Barnett Rice, deceased, by article ninth of her will said:
"I hereby give and bequeath to the following named persons during their respective natural lives, the following annuities, which shall begin from the date of my death and shall be paid in equal monthly installments, the first of which installments is to be payable thirty days after my death, to wit;"
Then follows the names of fifteen annuitants, a brother, a sister, nephews, nieces and friends, and the amounts to each, a total of $10,000. At the end of the list is added:
"And for the purpose of securing such annuities, I direct my executors to set apart and invest and keep invested in good securities for the benefit of each annuitant an amount, the income of which will be sufficient to produce such annuity; and I authorize them to use, in their discretion, for the purpose of such annuity-funds any security which may form a part of my estate at the time of my death.
"Upon the death of any annuitant, I direct that the amount up to that time so set apart and held by my executors as the annuity-fund for the benefit of such annuitants shall go to and be a part of the residue of my estate hereinafter disposed of."
By articles tenth, eleventh and eleventh-A, $30,000 is given severally to the executors in trust for three grandchildren, and by article twelfth, $18,000 to the executors in trust for specific purposes of a daughter. By article thirteen the residuary estate is given to the executors upon trust.
The estate is presently insufficient to provide the several funds for the annuities and to set up the trust legacies. The inventory value of the estate at the death of the testatrix, November 4th, 1929, available for setting up the funds and trusts was $292,469.86. It requires $326,000. The value has shrunk to $167,316.26, and the income accordingly. The values of the annuities, as of the death of the testatrix, are approximately $170,000, and the trust legacy $108,000. The executors ask instructions as to the manner of administering the estate.
The annuities and the trust legacies must abate pro rata and the assets equitably apportioned to them unless, as the *Page 6 
annuitants claim, the annuities are preferred. They claim as a favored class, not inter sese. The authorities leave no room for original thought on this point. That the gifts are annuities give them no distinction over other pecuniary legacies. An annuity is merely a succession of pecuniary legacies and stands upon the same footing, and abates pari passu with other general legacies. 3 Pom. Eq. Jur. § 1139; Rop. Leg. 419. That the annuities were to be secured by assets of the estate sufficient to yield the annuities gives them no superiority; the legacies were also to be secured and paid out of the same common fund of which there is not enough to satisfy all. A bequest of an annuity charged on personalty is a general legacy which abates proportionately with other legacies and with the property on which it is charged in case of a deficiency. 40 Cyc. 1911. The annuities, singly or collectively, have no seniority earmark. Most, if not all, the annuitants are impecunious; some had allowances under trusts established by the testatrix which ended with her death, but all she had given and that which she left to them were pure bounty, as were the legacies to the daughter and the grandchildren. The testatrix did not discriminate; the law does not. There is no occasion to presume favor of the annuitants over the other legatees. Titus' Adm. v. Titus, 26 N.J. Eq. 111.
None had a charge, as in Justice v. Justice,20 Atl. Rep. 208, and Roll v. Roll, 68 N.J. Eq. 227, for dower, where annuities to widows were preferred because of the charge.Duncan v. Franklin Township, 43 N.J. Eq. 143. The legatee's near relationship to, or dependence upon the testator, or the meritorious character of the object to which the legacy is to be applied, is not enough to exempt it from abatement. Titus' Adm.
v. Titus, supra. In New York annuities for support, maintenance and education of a near relative are exempt from abatement where the testator's solicitude in this respect finds some expression in the will from which, with the aid of surrounding circumstances, the intent is found that they should be paid in full and at all events. Bliven v. Seymour, 88 N.Y. 469; Matterof Neil, 238 N.Y. 138; In re Gibson's Will, 151 N.Y. Supp. *Page 7 459. The New York rule has not been followed in this state, and the instant case affords no opportunity for applying it, were it law; the will is silent as to the use of the annuities. The legacies to the grandchildren are for their "benefit, education and enjoyment" but they claim no preference.
The value of the annuities is to be determined as of the death of the testatrix. The default in payment is as of then. Interest will be added up to the due date of the trust legacies. Todd v.Bielby, 27 Beav. 353. Annuities of $25,333.02 were paid before discovery of the deficiency; the sum with interest is a capital asset for which the annuitants will account.
The American four per cent. table is adopted by chancery rule 246 for calculating the gross value of dower, and, in common practice, is standard for computing life interests generally. It is also used by insurance companies in calculating life insurance premiums. The value of the annuities will be computed according to the combined annuity four per cent. tables now in general use by insurance companies for calculating the cost of annuities; it is based on modern actuarial experience, and it is common knowledge that the average life has been extended ten years in the past seventy. The annuitants are entitled to present values and the formula suited to present conditions is to be applied as the measure; a test of value is the cost.
The quality of the annuities is not open to question — a stated sum per annum payable annually unless otherwise directed. They are, none the less, pure annuities because they were to be secured by a trust fund and paid out of the income. Lord Cranworth, in Baker v. Baker, 6 H.L. Cas. 616, said: "In all these cases arising upon the construction of wills, the real question is, whether that which is given is given as an annuity, or is given as the interest of a fund; and where that question is to be considered, what you must look to is this; whether the language of the testator imports that a sum, at all events, is annually to be paid out of his general estate, or only the interest, or a portion of the interest, of a capital sum which is to be set apart." The annuities are plainly not gifts of the income of the fund; *Page 8 
they are to be paid out of income for the yielding of which the trust may come against the corpus of the estate constantly, limited only by the requirements, obvious from the direction that "upon the death of an annuitant the amount up to that time set apart and held by my executors * * * shall go to and be a part of my residuary estate." "The testator did not mean that the payment of the annuity should depend upon the appropriation. The appropriation was merely a means to an end, and no matter how fairly it should be made, its subsequent failure to answer its purpose was not to defeat the annuity. It was not designed to release the residuary estate upon which the annuity was charged."Merritt v. Merritt, 48 N.J. Eq. 1; Stephens' Ex'rs v.Milnor, 24 N.J. Eq. 358; Steelman v. Wheaton, 72 N.J. Eq. 626,
support the test, but they do not approach the problem of how to satisfy the annuities, their value having been determined.
The settled English practice, upon abatement of annuities for deficiency of assets, is to pay the annuitants the value as reduced "to give the annuitant the benefit of the chance of dying before the payment of the annuity in full has exhausted the fund set apart at the reduced value." Wroughton v. Colquhoun, 1 DeG. Sm. 357; Todd v. Bielby, supra; Heath v. Nugent, 29Beav. 226; In re Wilkins, 27 Ch. D. 703; In re Cottrell, 1 Ch.D. (1910) 402; In re Dempster, 1 Ch. (1915) 795; In reTaylor, 53 L.J. Ch. (N.S.) 1161.
Three of the annuities terminate upon marriage. They will be set up in securities and the annuities paid though thereby the fund be ultimately exhausted. In the Dempster Case the amount was ordered invested in annuities, but as that is impracticable here, as will be later seen, the equitable course is to set up the fund and give the annuitants the full benefit of the gift by paying the annuities as long as the fund lasts.
The contention, that to pay the annuitants outright is contrary to the intent of the testatrix, and the proposition that their allotments be funded and the interest paid to them, give but momentary pause. The reasoning of the Lord Chancellor in Baker
v. Baker, supra: "According to the construction *Page 9 
which is contended for, on behalf of the widow, this strange state of things would arise, that, supposing her life to continue for many years, the provision which was clearly intended for her by the will, might in the course of time, by appropriating annually a portion of the corpus of the property, be utterly annihilated, and she would be left without any provision at all; and therefore, as the question is one regarding intention, I apprehend that nobody can suppose that such an intention could ever have existed in the mind of the testator." * * * is urged as authority, that the annuitants' shares should be funded, overlooking the distinction there pointed out, that the fund was to go over to others, not to fall into the residue. "* * * here it is apparent, from the language of the will, that the testator intended that the fund should be continued in its integrity during the life of the annuitant, and in that state should go over. The trustee is to stand possessed of the `said principal of the trust moneys,' c." See, also, In re Tootals' Estate, 2 Ch.D. 628; In re Tyler's Trusts, 2 Jur. (N.S.) 927; Wormald v.Muzeen, 50 L.J. Ch. (N.S.) 776, turning upon something in the will evincing delimitation of annuities to income. In the will under consideration the intention is, that the annuities be paid at all events, out of corpus to the point of exhaustion. That intention, however, has been altogether dislocated by the deficiency — and now, at the stage of apportioning what is left of the estate, to give the annuitants but the income of a reduced fund, would be cutting them down to enrich the residuary legatees with the capital (and incidentally the trust legatees) and that was not intended. Outright payment is their due. Apportionment of assets is an expedient of administration, a conformation to, not a compliance with the will. Each annuitant and legatee receives his share of the remnant of the estate and what becomes of the others is none of his affair. He has his, and all he can ever get. Apportionment is the final distribution.
The annuitants' shares could be used by the executors to purchase annuities, if the annuitants elect. Or they could be set up and the annuities paid until the funds become *Page 10 
exhausted; that would be precarious. Neither method was intended by the testatrix and is not desired by the annuitants. Let the sums be paid to them.
The apportioned assets will be paid over in kind. They consist, for the most part, of equitably divisible securities. There is shrinkage in values, more than shortage of securities, due to decline in stock market ratings, now, at what appears to be the end of the depression, on the incline and restoration to normal values, and dividends. Division, not conversion, is prudence.
By article twelfth, Mrs. Rice says:
"I give, devise and bequeath the sum of eighteen thousand ($18,000) dollars to my executors and trustees, in trust, nevertheless, for the following purposes:
"To invest, reinvest and keep the same invested during the term of the natural life of my daughter Dorothy R. Sims, and to apply the net income thereof, or so much thereof as may be required, during the natural life of my said daughter Dorothy R. Sims, to the payment of the expenditures incurred by my said daughter in the pursuit of her art work, to wit, for the lease of a studio, the employment of models, the purchasing of materials, and such other items incidental to her career as sculptor and painter.
"Upon the death of my said daughter Dorothy R. Sims I direct that the property referred to in this article of my will and all accrued income shall go to and be a part of the residue of my estate hereinafter disposed of."
Mrs. Rice built a studio on her daughter's property at a cost of $35,000. The trust fund is as well for expenditures in the "employment of models, the purchasing of materials and such other items incidental to her career as sculptor and painter." To the extent that the income is appropriable "for the lease of a studio" it is adeemed. Deduct from the legacy the present value for life of a reasonable rental of a suitable studio and abate the balance. The outlay by the testatrix in excess of this sum must be regarded as a gift, not in satisfaction of the other purposes of the legacy.
By article seventh, Mrs. Rice says:
"All inheritance of estate taxes, whether state or federal, shall be paid out of my general estate as an expense of administration, without *Page 11 
impairing or reducing the amount of any annuity, legacy or payment herein given or directed to be made, it being my intention that no charge for such taxes shall be assessed or imposed against or become payable by any annuitant, legatee orcestui que trust."
The intention is plain enough. We are, however, engaged in apportioning insufficient assets, where equality will be served by an apportionment of what remains to rights that now exist. InFarrar v. St. Catharine's College (1873), L.R. 16 Equity19, it is said: "* * * a gift of legacy duty on a specific or pecuniary legacy was a common pecuniary legacy for the benefit of the specific legatee in the one case, and of the pecuniary legatee in the other; and in the event of the general estate being insufficient, the gifts of legacy duty must abate along with other pecuniary legacies. The value of the specific legacies must, therefore, be ascertained, and the amounts of legacy duty payable thereon calculated; and such amounts must be treated as pecuniary legacies, and abate accordingly."
The direction to pay the taxes as an expense of administration does not alter the rule in abatement. The legacy duty is regarded a gift to be added and abated.
The question of the trust legacies violating the rule against perpetuities is premature. The legacies to the first takers are unimpeachable. McGill v. Trust Co. of New Jersey, 94 N.J. Eq. 657.
Whether the estate will go over to others, time alone will tell and until it does, when succeeding interests may care to be heard, judgment must be withheld. Nagle v. Conard, 79 N.J. Eq. 124.
The matter will go to a master to report the essentials to a decree consistent with these conclusions. *Page 12