A reading of the pleadings discloses that complainants, the executors of Henry H. Ottens, deceased, desire this court to construe his last will and testament and to declare complainants' rights, duties, and liabilities thereunder.
By stipulation, the parties agreed that the matter be disposed of by me on briefs submitted by all the parties in interest. A reading of these briefs discloses that the real difficulty *Page 150 
confronting the executors requires that they be advised as to the legal classification of the bequests set forth in the will, and a determination of priorities as between the beneficiaries named therein. This necessitates a consideration of each bequest, even though the principal difficulty appears to be, in the minds of the executors, the annuities set up in items 12 and 13.
My understanding, from the briefs, is that the assets of the estate are insufficient to satisfy all the legacies in full and my conclusions are premised on that situation.
In the first place, we must keep in mind the three general classifications of legacies, general, specific, and demonstrative, which are defined by Vice-Chancellor Berry in Inre Low's Estate, 103 N.J. Eq. 435, 437, 438, and the distinguishing characteristics between them pointed out, as well as the incidents pertaining thereto.
All are in accord that the legacies set forth in items 1, 2, 3, 5, 6, 11 and 12, being money bequests, are general legacies, to be paid out of the assets of the estate and subject to abatement.
Items 4, 13, 14 and 15 are of the same general character.i.e., all provide for the payment of weekly annuities to the beneficiaries named therein, some for life and some for a period of five years. These, too, are general legacies and abate paripassu with other legacies of that class. See Chemical Bank andTrust Co. v. Barnett, 114 N.J. Eq. 4, in which Vice-Chancellor Backes said:
"An annuity is merely a succession of pecuniary legacies, stands upon the same footing, and abates pari passu with other general legacies."
With reference to items 13 and 14, it is urged by complainants that they believe that it was the intent of the testator that Marie Matilda Duncan and her husband, William G. Duncan, the former being testator's sister, be provided for during their respective lives. What he did, however, was to create legacies that abate under the law in the event of failure of assets, and the mere fact of the close relationship of brother and sister is not sufficient to give them a priority. The presumption is that testator intended that all general legacies be *Page 151 
paid equally, and this presumption will not be repelled except by proof of a clear and convincing character, supplied by the party seeking priority. Titus' Adm'r v. Titus, 26 N.J. Eq. 111, and note that "a legatee's near relationship to, or dependence upon, the testator, or the meritorious character of the object to which the legacy is to be applied, is not enough to exempt it from abatement," as said by Vice-Chancellor Backes in Chemical Bankand Trust Co. v. Barnett, supra (at p. 6), citing the TitusCase.
Items 8, 9 and 10 are in a different category. They, as in item 8, "give" to the beneficiary named "my stock" and direct, as in items 9 and 10, the executors to transfer to the named beneficiary "my stock" in the Henry H. Ottens Manufacturing Company.
Counsel for the infant beneficiaries urge that these gifts, if not general, are demonstrative but not specific. With this contention I do not agree, but, on the contrary, hold that they are specific, subject to ademption but not to abatement.
In the case of Norris v. Executors of Thomson, 16 N.J. Eq. 218; reversed, 16 N.J. Eq. 542, the essential elements of a specific legacy are clearly defined and have since been frequently affirmed by numerous decisions of the court of errors and appeals, as well as by this court. The reversal above referred to did not affect the statement of principles of the court below, but disagreed with the ultimate finding of that court, based on those principles. The vice-chancellor held that the legacies of stock under consideration were general and not specific. The court of errors and appeals found to the contrary and said (at p. 546):
"It is conceded, that if he had directed the trustees to give to his sisters, and nephew and niece, a certain number of shares of his stock, and to his friends five of his bonds, he thereby would have so individuated, by words, the property which he desired that his legatees should have in kind, that a serious question could not have been made about his intention," i.e., specific.
It is, of course, elementary that courts favor general legacies over specific and that the inquiry always is, not whether testator *Page 152 
may not have intended to give the specific shares, but rather whether it clearly appears that testator did so intend.
Just how testator could have more clearly indicated his intention to give the specific shares of stock in the instant case I fail to see. I quote items 8, 9 and 10:
"Eighth: I give to Gregory Birkenstock, ten shares of my stock in the Henry H. Ottens Manufacturing Company.
"Ninth: I direct my executors and trustees hereinafter named, to transfer to John A. Quill, five shares of my stock in the Henry H. Ottens Manufacturing Company each year for a period of five years; should said Quill die before receiving the twenty-five shares of stock above mentioned, then the remainder of said twenty-five shares of stock shall be transferred to his wife, if living, but if she be deceased, then the same shall revert to my residuary estate.
"Tenth: I direct my executors and trustees hereinafter named, to transfer to William H. Moyer, four shares of my stock in the Henry H. Ottens Manufacturing Company each year for a period of five years; should said Moyer die before receiving the twenty shares of stock above mentioned, then the remainder of said twenty shares of stock shall be transferred to his child or children."
Note that in item 8 he gives ten shares of "my stock" to Birkenstock and in items 9 and 10 he directs his executors to transfer "my stock" to the beneficiaries therein named, and in these last two items he directs that if the first-named beneficiary dies before all the stock is "transferred," that the remainder shall be "transferred" to others.
It is always with regard to specific shares of "my stock" that he speaks and the legatees could not be satisfied other than by a delivery of the specified stock. If, at testator's death, there had been no such stock, the legacies could not have been satisfied. There would have been an ademption.
It is quite apparent that testator had no fear of a failure of the legacies from ademption. The stock was in a corporation of which he was practically the owner, which he conducted as his own, and he knew the exact number of shares of his stock and also was fully aware that it was not sold on the market or otherwise, unless he himself desired to dispose of shares for qualification purposes.
Pomeroy, in 3 Pom. Eq. Jur. Note 2 § 1130, says: *Page 153 
"Bequests of the whole or part of shares, stocks, bonds, and such securities, either governmental or issued by corporations, given in language which `marks the specific thing,' the very`corpus,' are specific; e.g., when the testator says `my stock,' so much `in' or `of' `my stock,' `my shares,' `invested by me' in a company named, `which I have,' or `possess,' or `standing in my name,' or `all my property in the funds,' and the like."
Following the above there are many citations of authority in support of the text. There are many cases in New Jersey in addition to Norris v. Executors of Thomson, supra, to the same effect, including Mecum v. Stoughton, 81 N.J. Eq. 319;
in which case Vice-Chancellor Leaming, in the first syllabus, said:
"The use of the words `my stock' or `stock owned by me,' and similar language, sufficiently individuates the stock then owned by a testator to render a legacy thereof specific."
My investigation fails to disclose any case in this state holding to the contrary, but I do find that in Spinney v.Eaton, 111 Me. 1; 87 Atl. Rep. 379, the court arrived at a different conclusion and held that the legacies therein considered were demonstrative and it did so in order to prevent an ademption, the court being clearly of the opinion that the intention of the testator, as gathered from the four corners of the will, was that there should be no ademption.
Of course, I do not mean to hold that the question of testator's intention is controlled by the use of particular words and expressions. The true rule is that laid down in Norris v.Executors of Thomson, supra, in the second syllabus:
"The intention of the testator must be expressed in reference to the thing bequeathed, or it must otherwise clearly appear from the will."
The distinction between general and specific legacies is well pointed out in Weed v. Hoge, 85 Conn. 490; 83 Atl. Rep. 636
(at p. 638), wherein the court said:
"The fundamental distinction between general and specific legacies is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing, or things, while the latter are gifts of particular *Page 154 
specified things, or of the proceeds of the sale of such things, or of a specific fund or a defined portion thereof. In the case of the former, there is no intent on the part of the testator to make a specific disposition of particular assets of his estate as such; in the latter case, the intent is that the attempted donation shall be satisfied by the delivery of specific property forming a part of the estate, and so described as to be identified as the subject of the gift, and in no other way. * * * A specific legacy is the gift of something `which a testator, identifying it by a sufficient description, and manifesting an intention that it should be enjoyed or taken in the state or condition indicated by that description, separates in favor of a particular legatee from the general mass of his personal estate.'"
But counsel for the exceptants argue that the legacy is demonstrative.
A demonstrative legacy is defined by 2 Page § 1230: "A demonstrative legacy is one which is payable out of the estate generally, but which is charged, as against other legatees or devisees, on certain specific property."
Vice-Chancellor Berry, quoting 28 R.C.L. tit. "Wills" 292 §266, in speaking of such a legacy, says:
"A demonstrative legacy partakes both of the nature of a general and a specific legacy. It is a gift of money or other property payable out of or charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund, or to evince an intent to relieve the general estate from liability in case the fund fails. Two elements are necessary to constitute a demonstrative legacy, viz., it must appear first that the testator intended to make an unconditional gift in the nature of a general legacy; and, secondly, the bequest must be given with reference to a particular fund as a primary source of payment."
In Blair v. Scribner, 65 N.J. Eq. 498 (at p. 517);57 Atl. Rep. 318, Vice-Chancellor Emery pointed out:
"The name and the legal concept of `demonstrative legacies' came from the civil law, and the illustration from this law of a legacy of this kind is given by Chancellor Kent in Walton *Page 155 
v. Walton, 7 Johns. Ch. 262: `We have an example of this kind of money legacy given in the civil law and of the sound principle upon which the distinction is supported. The testator gave to Pamphila four hundred aurei, or pieces of gold, and referred to a debt which Julius, his agent, owed him, and to his property in the army, and to his cash. * * * He died without altering his will, but after he had converted all that property to other uses; and the question was whether the legacy was due. The answer of Julian, the civilian, was, that the testator intended only to point out to his heirs the funds from which the legacy could be most easily drawn, without intending to annex a condition to a pure gift and that the legacy was consequently to be paid.' After stating that the English decisions up to that date turn on very refined distinctions, Chancellor Kent gives the following result of his careful analysis of the authorities in cases of this character:
"`The reasoning on this subject is that, if the legacy is meant to consist of the security, it is specific, though the testator begins by giving the sum due upon it. A legacy of a debt, unless there is ground for considering it a legacy of money, and that the security is referred to as the best mode of paying it, is as much specific as the legacy of a horse, or any movable chattel whatever. If the specific thing is disposed of or extinguished, the legacy is gone. * * * It is essentially a question of intention, when we are inquiring into the character of a legacy upon the distinction taken in the civil law, between a demonstrative legacy, where the testator gives a general legacy, but points out the fund to satisfy it, and where he bequeaths a specific debt.'"
Let it be remembered that in a demonstrative legacy that if there be insufficient specified property to pay it, the legacy is not thereby adeemed, but that it will be paid, as to the deficiency, out of the general estate. 2 Page on Wills § 1231.
Supposing there was no stock, or an insufficient amount thereof, in the estate at the time of testator's death. Could the executors pay these stock legacies out of the general assets of the estate? The answer is obvious. Certainly the gift of *Page 156 
five shares of "my stock" in a named company is a gift of particular stock (the security) and if there is no stock to satisfy that description, the general estate is relieved of the payment of the legacy.
In item 16 testator gives free occupancy of his residences and use of furniture in his New Jersey and Pennsylvania homes to certain beneficiaries, and in item 17 he gives to his sister the right "to select" furniture and household goods in the two homes.
The use of the homes and furnishings is until sale by the executors and the intention of the testator, so clearly expressed, must be carried out.
In Kearns v. Kearns, 77 N.J. Eq. 453, the gift of the furniture or right to select is a specific legacy, and that it is in form of a selection does not change its classification. 69C.J. 935.
Testator provided that all legacies not specifically otherwise provided for should be paid "at any time within five years." The legacy of the annuities were provided to be paid "from the date of my death." All others within five years, at the discretion of the executors. Mr. Ottens died May 7th, 1932, and the executors have filed their first accounting in the Cape May county orphans court, but, as I understand it, have paid nothing on account of the legacies, other than a certain amount on account of annuities. These moneys in the hands of the executors must be disbursed in accordance herewith and, in so doing, the executors will follow, as to annuities, the rule laid down by Vice-Chancellor Backes in Chemical Bank and Trust Co. v.Barnett, supra. *Page 157