In this suit the widow of Samuel Berry seeks a construction of that part of his will which directs the executors to purchase an annuity for her. The clause in question reads as follows:
"Third: I authorize, empower and direct the executor of my said will hereinafter named, to set aside and expend a sum for the purchase of an annuity from a reliable insurance company to produce an annual income of Three thousand ($3,000) Dollars, and I direct that said sum be paid in equal monthly installments to my wife, MARY JANE BERRY, during the term of her natural life. I further direct that in no event shall my said wife be permitted to elect to take a capital sum in lieu thereof. It is my desire that my said executor purchase said annuity from the Equitable Life Assurance Society of the United States or the Metropolitan Life Insurance. In *Page 165 
the event that a suitable annuity cannot be purchased from either of these companies, then my said executor shall have full discretion in its choice of a suitable life insurance company."
The other clauses of the will provided for an outright bequest to complainant in the amount of $10,000 and bequests to others aggregating some $7,000, with the complainant as residuary legatee.
At the hearing, the following facts and circumstances were brought out:
The will was executed in October, 1940, and decedent died on November 24th, 1941. The complainant is seventy-nine years of age, and her life expectancy under the American Experience Table of Mortality is only 4.74 years. It is, however, common knowledge that the average life has been extended many years since the tables were drawn up. Chemical Bank and Trust Co. v. Barnett,114 N.J. Eq. 4.
It was shown that complainant has been in very bad health for a period beginning before the execution of the will and that she has been in need of constant medical attention ever since her husband's death.
It was shown that a non-refund annuity to produce $3,000 for the complainant, which is the cheapest form of annuity obtainable, would cost approximately $29,000, whereas a cash refund annuity or an installment refund annuity would cost many thousands of dollars more. To purchase the cheapest form of annuity would almost exhaust the estate after payment of the specific bequest, and the residue of the estate would not be sufficient to purchase the other two forms of annuity.
It is the contention of complainant that testator had no right to compel her to take an annuity, but that she has the right to take the principal sum necessary to purchase the annuity. It is allowed, on her behalf, that in view of her short expectation of life, and particularly in view of her physical condition, it would impose a great hardship upon her to compel her to accept $3,000 a year for a very few years — perhaps only one, two or three years — whereby her residuary share in the estate would be depleted to almost nothing. *Page 166 
To give the complainant the right to take the cost of an annuity instead of the annuity itself would be directly contrary to the express provision in the will which forbids this. To sustain her contention, the clause in question must be found to provide for the doing of an illegal act or to be violative of public policy, for it is well settled that otherwise the intention of a testator will be carried out, no matter how harsh or unfair it seems to be.
In Brearley v. Brearley, 9 N.J. Eq. 21, the court says:
"However unreasonable it may be, it is the will of the testator we must execute. If it violates no principles of law or morality, the testator's intention must be our only guide in giving effect to it. We cannot alter it for the purpose of making it more liberal or just, according to our estimate of liberality and justice."
In Genung v. Best, 100 N.J. Eq. 250, the court says:
"In construing a will, the court seeks to ascertain the intention of the testator and when ascertained it will be given effect unless it contravenes some rule of law or of public policy."
In Marshall's Executors v. Hadley, 50 N.J. Eq. 547, the court says:
"Where a testator makes known his purpose respecting the testamentary disposition of his property by the use of plain and unambiguous language, though his purpose may seem unreasonable, unjust, or absurd to others, his will is its own expositor and a law unto the court."
In National Newark and Essex Banking Co. v. Arthur SunshineHome, 113 N.J. Eq. 313, the court says:
"That the plain intent of the testator as evinced by the language of his will must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition.
"In the construction of a will the court must do everything in its power to discover the testator's intention and to see that they are carried out if possible.
"The plain intent of the testatrix being that the fund arising from the proceeds of her residuary estate should be held intact and only the income paid over to the beneficiaries *Page 167 
this court is not warranted in defying her purpose and disregarding her intent by holding the beneficiaries to be presently entitled to the payment of the principal of the trust which she created for their benefit. To do so would be to make a new will for her, and this the court cannot do."
It is of course clear that testator intended to provide for a definite income at the rate of $3,000 a year and put it beyond her power to receive the cost of such an annuity. This assured the certainty of a definite income for life without the possibility that she might possibly lose it through unwise investment. Facts and circumstances brought out at the hearing show that the testator inserted this provision with full knowledge of the result of the provision. The will was made about a year before his death in 1941, when both he and his wife were advanced in years, and when the expectation of life of neither of them could have been a great number of years. At the time of the making of the will, it was shown that he knew that his wife was in bad health, although it seems to have deteriorated considerably since his death.
I can see no basis for the contention that the provision which forbade her to take, at her option, the cost of the annuity is either illegal or violative of public policy. The purchase of an annuity is a common practice in order to provide an assurance of a fixed income without risk of loss through bad investment or exhaustion of principal because of survival beyond the anticipated length of life. Annuities are in essence the converse of life insurance policies, in which indeed it is not an unusual provision to provide that the amount of the policy shall be paid as an annuity to the beneficiary. The legality of such contracts has never been questioned. Nor can I see that it is contrary to public policy to provide for the creation of an annuity without the option to the legatee of taking the cost.
No New Jersey case has been found by counsel which is contrary to this conclusion. Complainant cites some New Jersey cases which it is contended lay down principles which are contrary to those here expressed. But in the cases cited, there were the rights of remaindermen involved after the death of the annuitants, and the carrying out of the provision for *Page 168 
the annuity and the provisions for the remainderman could not be consummated in full because of a deficiency caused by an attempt to distribute more than the value of the estate. That question does not arise here since the complainant was herself the residuary legatee, and to give her the right to receive the value of the annuity would, in effect, simply void the annuity clause and throw the entire remainder into the residuary estate.
In the case of Chemical Bank v. Barnett, supra, the provision was not for the purchase of an annuity but by the payment of an annuity out of the estate, and there were insufficient funds in the estate. The court says:
"In the will under consideration the intention is, that the annuities be paid at all events, out of corpus to the point of exhaustion. That intention, however, has been altogether dislocated by the deficiency — and now, at the stage of apportioning what is left of the estate, to give the annuitants but the income of a reduced fund, would be cutting them down to enrich the residuary legatees with the capital (and incidentally the trust legatees) and that was not intended. Outright payment is their due.
"The annuitants' shares could be used by the executors to purchase annuities, if the annuitants elect. Or they could be set up and the annuities paid until the funds became exhausted; that would be precarious. Neither method was intended by the testatrix and is not desired by the annuitants. Let the sums be paid to them."
In Quill v. Schlichter, 121 N.J. Eq. 149, where also there was a deficiency of assets, the rule of Chemical Bank v.Barnett was followed. To the same effect is First NationalBank of Toms River v. Levy, 126 N.J. Eq. 493; affirmed,128 N.J. Eq. 220. It will be noted that in all these cases, the full provisions of the will could not be carried out because of a deficiency of assets and that the court read into the clause in question an intention to commute the value of the annuity and then abate it pro rata, so as to as nearly as possible carry out the other provisions of the will. The quoted language inChemical Bank v. Barnett shows clearly that the construction for the commutation of the annuity was based upon the intention *Page 169 
of the testator and the will was given the construction so as to carry out, as nearly as possible, that intention in view of the dislocation caused by the deficiency. No such situation occurs here.
I am aware that in New York, Massachusetts and in England, there have been decisions to the effect that the beneficiary of a will has the option to take the cost of the annuity, but in only one case, that of Bertuch, 225 App. Div. (N.Y.) 773, did the will expressly forbid the exercise of the option to take the value of the annuity. In the case of Oakley's Will,254 N.Y.S. 306, the court says:
"The principle was extended to its utmost limit in the BertuchCase, in spite of the fact that the direction contained in the will to purchase the annuity was mandatory and the direction given that the annuitants should not be allowed to accept direct payment in lieu thereof. Apparently, this principle follows the English cases. It eliminates the cardinal principle of testator's expressed intention."
I can see no ground for following the Bertuch Case by violating this principle.
I accordingly find that the provision for the mandatory purchase of an annuity is binding upon the executor as against the demand of the complainant that she be paid its value.
The remaining question is as to the contention of complainant that the will is ambiguous as to the meaning of the word "annuity." Since it was shown on the hearing there are three kinds of annuity — non-refund annuity, cash refund annuity and installment refund annuity, I do not consider that any serious question is raised here. The two classes of refund annuity are those in which, after the death of the annuitant, there is provision for payment of a surplus over and above the amount paid. In the instant case, the provision of the will itself is that the sum of $3,000 be paid to complainant during her natural life with no provision for any payment to anyone upon her death. This would clearly indicate an intention for a non-refund annuity. Additional light as to the intention of the testator is found in the facts and circumstances surrounding the making of the will. At that time, he himself had two non-refund annuities. The *Page 170 
amount of his estate was approximately the same at the time of the making of the will as at his death, and taking into account the other provisions of the will, the estate would be insufficient to purchase anything except the cheapest annuity, namely, a non-refund annuity. Since, after the payment of specific legacies, complainant was to receive the entire residuary estate, there could be no purpose in providing for either form of refund annuity. I accordingly find that the provision of the will is for a non-refund annuity.
A decree will be advised in accordance with this opinion.