Complainant, one of the executors under the will of William Black, brings this suit for a construction of his will.
Relevant clauses of the will are as follows:
"Fifth — I give, devise and bequeath all the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever the same may be situate, unto my executors and trustees hereinafter *Page 307 
named in trust, nevertheless, for the uses and purposes hereinafter expressed, to wit:
"(a) To vote the shares standing in my name on the books of any corporation in which I am a stockholder, and to receive the dividends and gains therefrom, which dividends, whether ordinary or extraordinary, shall be considered as income, and distributed as such, together with all proceeds from the sale of "rights."
"(d) To pay to my wife, ELEANOR G. BLACK, so long as she shall live, the sum of Three Hundred and Fifty Dollars ($350. —) on the first day of each and every month ensuing my death.
"(f) To set aside and reserve twenty-five shares of the stock of the Rutherford National Bank for each of my grandsons, or the survivor of them until each grandson shall attain the age of twenty-five years. Upon each grandson attaining the age of twenty-five years, said twenty-five shares shall be transferred and delivered to said grandson.
"(g) To pay the balance of the net income arising from my estate unto the guardian of my said grandsons, during such guardianship for the equal nurture, care, education and maintenance of my said grandsons, or the survivor of them. As each grandson attains his majority the payment heretofore made to the guardian for the benefit of such grandson, shall be paid by my trustees, semi-annually, directly to such grandson."
Upon the death of the widow, the corpus is to be paid to the grandsons or their representative.
Decedent was survived by his widow and his two grandsons, one of whom had attained the age of twenty-five years before the filing of the bill herein, and the other grandson has since attained that age. In the estate were sixty shares of stock of Rutherford National Bank of a par value of $100. Soon after the death of decedent, the stock of the Trust Company was split four shares for one having a par value of $25 each, and at the same time, a stock dividend of 50% was declared, so that the holdings of the estate in the hands of the executors became 360 shares instead of the original 60. Still later, the par value of each such share was reduced to $10. The income from the estate has not been sufficient for some years last past to pay the widow the sum of $350 as provided in subdivision (d) of paragraph fifth of the will. These deficiencies now aggregate approximately $2,000.
Decedent was the holder of a mortgage on certain vacant land at Parsippany-Troy Hills, in Morris County. Decedent acquired title from the receiver of the mortgagor, taking title *Page 308 
in the name of the corporation which he owned. The property was sold by the executors, who took back a purchase-money mortgage on which a default was made, and ultimately the executors obtained title to the land in lieu of foreclosure. Meantime, taxes have accumulated against the property to the sum of approximately $3,000, and the foreclosure of the tax sale certificate is imminent.
No allowances have been asked for or made for the fees of the executors or their proctors.
The first question is as to the right of the widow to receive the balance of the payment of $350 a month out of corpus or whether, under the will, she is entitled to payment only out of income, which is admittedly insufficient. The will does not expressly direct whether payment shall be made out of income alone. Nor does the will state that the payments were to be made out of corpus. The provision is that the residuary estate is given in trust "to pay to my wife, Eleanor G. Black, so long as she shall live, the sum of $350 on the first day of each and every month." In my opinion, this clearly indicates an intention that the sum should be paid to her in any event. It is argued on behalf of the grandsons that the contrary was intended from the fact that in subdivision (g) it was provided that the balance of the net income shall be paid to the guardians of the two grandsons. It seems a reasonable inference that, at the time of the making of the will, decedent contemplated that the estate would be large enough not only to make a payment to the widow, but also to provide additional income to the grandsons. This expectation has not in fact been realized and, not only is there no surplus income for the grandsons, but it is not sufficient to make the payments to the widow.
It is my conclusion that the construction to be given the will is that payments are to be made to the widow in any event, irrespective of the income produced.
The next question is as to the number of shares of stock of the Trust Company to which each of the grandsons is entitled, and also whether this stock is to be considered as a general or specific legacy. This has a bearing on the fund out of which expenses of administration will be payable, since if the legacies are specific, these expenses will be chargeable *Page 309 
first against the balance of the estate. It is contended that, under the language of the will, the bequest to the two grandsons was not expressly directed to be made out of the 60 shares of stock of the Trust Company which testator in fact owned, but only amounted to a direction that the executors should obtain and deliver the specified number of shares to each of the grandsons. In order to create a specific legacy, the will must use possessive words or phrases, and in the absence of such words, the presumption is that the legacy is general. The rule has been laid down in In re Low, 103 N.J. Eq. 435 (at p. 439). The court says:
"A legacy of stock, whether given in general terms or given as so many shares of the particular stock, is a general legacy whenever the testator does not expressly refer to it as `in my possession,' `stock owned by me,' `my stock,' or `in my name' at the date of the execution of the will, or does not use similar qualifying words, and the mere fact that at the date of the will it appeared that he did own stock and securities of the character bequeathed equal to or greater in value than those devised will not alone make the legacy specific unless the testator shall refer to the identical securities in his possession. 1 Under.Will 556 § 408. See, also, Mecum v. Stoughton, 81 N.J. Eq. 319; Savings Investment and Trust Co. v. Grouch, 93 N.J. Eq. 311; Norris v. Thomson's Executors, 16 N.J. Eq. 542; Matter ofKing, 122 N.Y. (App. Div.) 349; 106 N.Y. Supp. 1073.
"In determining whether legacies of stock are general or specific, the inquiry is not whether the testator may not have intended to give the specific shares then owned, but whether it clearly appears that he did so intend, for a clear intention upon the part of the testator must appear in order to make the legacy specific. Mecum v. Stoughton, supra."
However, it does sufficiently appear from the language of the instant will that it was the intention of the testator to give his grandsons stock which he had in his possession. The language used in subdivision (f) of paragraph Fifth is "to set aside and reserve 25 shares of the stock of the Rutherford National Bank for each of my grandsons." The fact that the will speaks of "the" stock, clearly indicates a reference to existing stock, and subdivision (a) had already referred to *Page 310 
"shares standing in my name on the books of any corporation in which I am a stockholder," in a clause providing for the right to vote the shares and to receive and distribute dividends. The word "the" can only refer to existing stock and to stock owned by the testator. Not only is this language possessive, but the clause in question directs the executors to "set aside and reserve 25 shares of the stock of the Rutherford National Bank." This language, too, can only refer to existing stock, and necessarily seems to ear-mark a portion of a larger amount. In the present situation, this means the application of 50 shares of the existing 60.
It is my conclusion that these bequests of stock are specific.
As to the number of shares of stock to which the grandsons are entitled, their rights are not affected by the various changes in form of the number of shares made by the bank. The 25 shares of stock at the time of the death of the testator were changed to 100 shares by a four to one split-up, but this was a nominal change and in nowise affected the percentage of interest in the bank represented by the original certificates. Nor was the proportionate interest affected by the 50% stock dividend, so-called, which is not in essence a dividend at all. The 25 shares became 100 shares and the 100 shares became 150 shares, all without affecting, in the slightest, the interest of the stockholder. The 150 shares represented the same aliquot interest in the assets of the bank. Stock dividends are not dividends at all, but merely a nominal realignment of capital structure as held in Eisner v. Macomber, 252 U.S. 189. In the case ofGarabrant v. Callaway, 113 N.J. Eq. 424, it was held that where there was a bequest of stock which was split up into a greater number of shares, the legatees took the increased number.
The remaining question is as to whether the executors should abandon the Parsippany-Troy Hills property, by conveyance to the municipality, in lieu of tax lien foreclosure. This property produces no income, apparently cannot be sold, and is heavily encumbered with taxes. The only persons who could be interested in its redemption would be the two grandsons who are the remaindermen on the death of the widow. There are no funds available to pay these taxes. To do so would be of little or no benefit to the remaindermen and would *Page 311 
work a hardship upon the widow. It is the usual rule that the life tenant must pay the taxes on real estate left by a testator. I do not consider this applies in the instant situation, because the real estate in question was the result of a foreclosure of a mortgage which produced no income, and the real estate in question was not a part of the testator's estate at the time of his death. The grandsons make no demand that the property be redeemed from the tax lien and consent to its conveyance to the municipality, and the executors are therefore authorized and directed to make such a conveyance.