This suit for the construction of a will is brought to determine whether certain payments directed to be made are payable only out of income, or whether they are chargeable against the principal of certain assets designated in the will, so as to make up any deficit in the income. Testator died in 1914, leaving the will of which the following clauses are sought to be construed:
"Fourteenth: All the rest, residue and remainder of my estate, real, personal, or mixed, and wherever situate, I give, devise and bequeath to my Executors hereinafter named, in trust, to be held by them and their successors for the uses and purposes hereinafter mentioned; I order and direct that my Executors or Trustees hereinafter named, sell and dispose of all my real estate, at such time, and upon such terms and conditions as they may deem fit and advantageous to the estate; said sale or sales to be made by the time my grandson, Eliot C. Smith, arrives at the age of twenty-one years, or sooner, if in their discretion they think the same should be sold; and when the same, or any part thereof, is sold by them I hereby authorize and empower them to give proper conveyance or conveyances therefor in the law; and until what is known as the `mill property,' owned by me, situated on Van Houten Street, in The City of Paterson, is sold, I authorize and direct my said Trustees to dispose of the income arising from said property as follows: Three thousand dollars to be set apart annually and deposited in the Paterson Safe Deposit Trust Company, as a sinking fund to cover necessary repairs and alterations to said property; Twelve hundred dollars to be paid annually to my daughter, Grace Congdon Smith, of Binghamton, New York, in quarterly payments; Twelve hundred dollars to be paid annually to Lucy C. Mosher, of Binghamton, New York, in quarterly payments; Twelve hundred dollars to be paid annually to Kate M. Benson, of Binghamton, New York, in quarterly payments.
"The remainder of the income from said mill property to be kept on deposit with the Paterson Safe Deposit Trust Company, together with the balance of my personal estate, or invested in such way as to my Trustees may seem proper for the use of my grandson, Eliot C. Smith, (or so much thereof as they may consider necessary), and from which shall be paid by my Trustees, all his necessary expenses *Page 431 
for board, clothes, schooling, c., and whatever my Trustees may see fit to allow him for sundry and incidental expenditures.
"When said mill property is sold by my said Trustees any and all of the amount unexpended for repairs and alterations remaining in said sinking fund shall be covered back into my estate and made part thereof; I then direct that my Trustees pay to my daughter, Grace Congdon Smith, of Binghamton, New York, the sum of Twelve Hundred ($1,200) dollars annually in equal quarterly payments for the term of her natural life. (I provide no greater annuity for my daughter because of the income my life insurance will provide for her.)
"I also direct that my Trustees pay to Lucy C. Mosher, of Binghamton, New York, the sum of Twelve Hundred ($1,200) dollars annually, in equal quarterly payments, for the term of her natural life.
"I also direct that my Trustees pay to Kate M. Benson, of Binghamton, New York, the sum of Twelve Hundred (1,200) dollars annually, in equal quarterly payments for the term of her natural life.
"After the decease of Lucy C. Mosher I direct my Trustees to pay to her daughter, Lucy Marzetta Mosher, the sum of one thousand (1,000) dollars per annum in quarterly payments during the term of her natural life.
"After the decease of Kate M. Benson I direct my Trustees to pay to her daughter, Helene Marie Cary, the sum of One thousand (1,000) dollars annually in quarterly payments, during the term of her natural life.
"To Kate A. Fox, my niece, of the City of Milwaukee, I give and bequeath the sum of Three Thousand (3,000) Dollars, to Lizzie C. Congdon, of Catskill, New York, I give and bequeath the sum of Five Thousand (5,000) Dollars; to Sarah C. McHenry, of Binghamton, New York, I give and bequeath the sum of Five Thousand (5,000) dollars; to the Paterson General Hospital Association, of Paterson, New Jersey, I give and bequeath the sum of Twenty-five Hundred (2,500) Dollars; to St. Joseph's Hospital Association, of Paterson, New Jersey, I give and bequeath the sum of Twenty-five Hundred (2,500) Dollars; to the Young Women's Christian Association of Paterson, New Jersey I give and bequeath the sum of Twenty-five hundred (2,500) dollars; to the Young Men's Christian Association of Paterson, New Jersey, I give and bequeath the sum of Twenty-five hundred (2,500) dollars; to the Masonic Home, situate near Burlington, New Jersey, I give and bequeath the sum of Two Thousand (2,000) Dollars."
"Fifteenth: The balance of the income from my entire estate not otherwise disposed of I direct shall be used as far as necessary in the judgment of my Trustees for the benefit of my grandson, Eliot C. Smith, and the balance of said trust fund and the funds of such trusts herein created as they may expire (subject to the necessary reservation by the Trustees to provide an amount sufficient to produce an income equal to the amount of the several annuities herein required to be paid) and all my residuary estate, with any accumulation *Page 432 
thereon. I direct my Trustees to pay to him when he arrives at the age of twenty-five years, and upon the death of said Eliot C. Smith before he arrives at the age of twenty-five years, I order and direct that the residue of the estate (subject to the Trusts herein created) be paid over by my said Trustees to five Trustees, four of which said Trustees, to be named by the Trustees of this my last will and testament, together with the Trustees hereunder, or their successor or successors, to constitute a Board of five Trustees for the purpose of establishing the "Congdon Textile and Manual Training Institute," the successors of which Trustees are to be chosen by a majority of the survivors, and the management of said Institute is to be wholly in the hands of said Trustees.
"A scheme or plan for the installation and management of said `Congdon Textile and Manual Training Institute' is herewith filed by me, which scheme or plan the Trustees above referred to are requested to follow as far as they find it practicable, and in accordance with the best justment of a majority of them so to do."
Since the death of the testator, his daughter, Grace Congdon Smith, has died. On November 29th, 1930, Kate Marie Benson died, so that the $1,200 payable to her was reduced to $1,000 and her daughter, Helene Marie Cary, now known as Helene Marie Benson, was substituted in her place. Likewise, Lucy C. Mosher died in 1936, and her daughter, Lucy Marzetta Mosher, became entitled to the payment, reduced to $1,000.
Eliot C. Smith became twenty-five years of age on June 30th, 1917, and the following year the complainant's predecessor conveyed to him the mill property mentioned in the will, and, in order to provide sufficient income for the payment of the amounts provided in the will, took back from him a purchase-money mortgage on the mill property in the amount of $75,000, with interest at six per cent. Eliot C. Smith died in 1926. His will left all his residuary estate to his widow, Helen B.W. Smith, by virtue whereof she became the owner of the equity in the mill property. Until 1939 Eliot C. Smith and his widow paid the interest on the mortgage, which was sufficient to pay the annuities provided in the will. However, Helen B.W. Smith defaulted on the taxes on the mill property from the year 1932 on and until the mortgage was foreclosed, resulting in a final decree on April 2d 1940. The taxes in arrears amounted to $30,000. *Page 433 
This, of course, appreciably undermined the mortgage security. In addition, the fact was conceded that Helen B.W. Smith failed to renew the lease on most of the land on which the mill property was situated from the owner of the land. The Society for Establishing Useful Manufactures, which lease, among other things, gave certain valuable water rights to the tenant.
By the foreclosure decree, the sum of some $80,000 was found due to the complainant for principal and interest, but exclusive of the back taxes. By sheriff's sale under the foreclosure decree, complainant, as trustee, acquired title to the mill property. Complainant also succeeded in selling certain water rights appertaining to the premises to The Society for Establishing Useful Manufactures in exchange for the sum of $10,000 and the fee in the premises, and also adjusted the delinquent taxes for the sum of $10,000. Complainant remained in possession of the premises until September 1st, 1942. During that time, in order to protect the property and make necessary repairs and alterations, so as to keep the property productive, and also to pay the annuities, complainant borrowed approximately the sum of $10,000. The income from the property was insufficient to pay the annuities and, accordingly, on September 1st, 1942, complainant sold the premises for the sum of $44,500, of which $14,500 was cash, and the balance a purchase-money mortgage for the sum of $30,000 with interest at the rate of four per cent., payable quarterly, together with quarterly payments on account of the principal in the sum of $375 during the first two years; the sum of $825 during the next six years; and the sum of $900 during the last two years. The cash realized was used to pay the $13,000 previously borrowed, together with the expenses of the sale, leaving a balance of $1,400 on hand. The interest on the purchase-money mortgage amounts, at most, to $1,200, and if the annuities at the rate of $2,000 are paid it will be necessary to invade the principal.
In my opinion, the sums of $1,000 each directed to be paid to Lucy Marzetta Mosher and Helene Marie Benson are fixed amounts and any deficiency of income is to be made up out *Page 434 
of corpus. The language of the will is unqualified. The language used is: "After the decease of Lucy C. Mosher, I direct my Trustee to pay to her daughter, Lucy Marzetta Mosher, the sum of $1,000 per annum in quarterly payments during the term of her natural life." The provision for the other annuitant is identical in language. There is no language used in the will to indicate that these annuities are to be paid only out of income. It is to be noted that until the mill property was sold the annuities to the mothers of the present life beneficiaries were to be paid out of income, but that upon such sale the clear and unequivocable direction is given that the precise sum be paid to the annuitants. Upon the attaining of the age of twenty-five years the direction is that the trustee shall provide an amount sufficient to produce the amounts of the various annuities. This reservation was in the form of a mortgage for $75,000 on the mill property conveyed to Eliot C. Smith. This sum, if it had remained intact, would have been ample to provide an income sufficient to pay the annuities, but, as heretofore stated, it did not remain intact, but was finally reduced to the present mortgage of $30,000, which does not provide sufficient income. This depletion of corpus and of income was caused by the failure of the widow of Eliot C. Smith, to whose rights she succeeded by his will, to make the payments of taxes, interest and principal of the mortgage at the respective times they became due. Whether this great impairment of the funds can be blamed on the widow, or whether, as is probable, it was without fault on her part and due only to the general depression of the times, is immaterial. In view of the express provisions of the will that the annuities were to be paid in any event and not out of income only, it is clearly inequitable that the annuitants should bear the burden of the failure of the widow, the remainderman, to comply with the terms of the mortgage.
This view is fully sustained by the authorities in Steelman
v. Wheaton, 72 N.J. Eq. 626, where the executor was directed to invest a sufficient sum to provide $1,200 interest, and "this sum of $1,200 I give and bequeath to my wife during her natural life." At page 629 the court says: *Page 435 
"Whether this bequest is an annuity is the only question to be considered on this branch of the case. In Booth v. Ammerman, 4Bradf. Surr. 129, an annuity is well described as follows: `An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount, varying according to the income or profits, though a certain sum may be provided out of which it is to be payable.' I am of the opinion that the bequest we are considering falls within this definition, for the executor is to invest a sufficient sum to produce $1,200 annually, which is to be paid to the annuitant during her natural life `in payments quarterly of three hundred ($300) dollars each.' It is the gift of a fixed sum, not indeterminate in amount, or varying according to the income or profits, and if the amount set apart by the executor to produce this annual sum should for any reason fail to produce it, the residuary legatee would be required to provide the deficiency * * *."
To the same effect are: Merritt v. Merritt, 43 N.J. Eq. 11;Welsh v. Brown, 43 N.J. Law 37; Rutherford National Bank v.Black, 133 N.J. Eq. 306.
In construing a will, the dominant idea pervading the testament must control, and minor considerations must yield if in conflict therewith. Commercial Trust Company of New Jersey v. Kohl,131 N.J. Eq. 233, and numerous cases cited.
In applying this rule to the instant suit, it is clear that the testator intended the payment of fixed sums, and that these sums should be payable without any abatement in any possible case of deficiency in income. It is, of course, true that the mortgage, the fund set aside for the annuities, was expected to produce ample income to pay the annuities, but the testator clearly did not intend that, under any circumstances, there should be any failure to pay the full amount of the annuities. The estate was a large one and, with the exception of a few other bequests which have been satisfied, the present annuities were clearly intended to be a fixed charge against the estate.
A decree will be advised directing that any deficiency of income shall be payable out of corpus. *Page 436