ISABELLE LITCHER, PLAINTIFF-APPELLANT, v. THE TRUST COMPANY OF NEW JERSEY, ET AL., DEFEND-ANTS-RESPONDENTS, AND MICHAEL LA PADULA, DE-FENDANT-APPELLANT.

Argued November 10 and 17, 1952—Decided December 15, 1952.

66

*Mr. Richard R. Powell*, of the New York Bar, argued the cause for the defendant-appellant Michael La Padula (*Mr. Maurice Brigadier*, attorney and counsel), and for the plaintiff-appellant Isabelle Litcher (*Mr. George J. Baumann*, on the brief; *Messrs. Wolf & Baumann*, attorneys).

*Mr. Edward J. O'Mara* argued the cause for the defendant-respondent Rev. Lawrence J. McGinley in his representative capacity as President of Fordham University (*Mr. Joseph

A. *Davis,* on the brief, *Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys) ; for the defendant-respondent Martin W. Stanton in his representative capacity as Director for New Jersey of the Society for the Propagation of the Faith (*Mr. Frederick J. Gassert,* attorney and counsel), and for the defendant-respondent Monsignor John L. McNulty in his representative capacity as President of Seton Hall College (*Mr. Philip J. Mylod,* on the brief; *Mr. James P. Mylod,* attorney).

*Mr. Emil W. A. Schumann* argued the cause for the defendants-respondents The Trust Company of New Jersey as substituted trustee under the last will and testament of Thomas J. Kavanagh, deceased, and Emil W. A. Schumann, executor of the estate of Emily E. Kavanagh, deceased.

The opinion of the court was delivered by

BURLING, J. This is a civil action wherein the categories of relief sought include a construction of the will of Thomas J. Kavanagh, deceased, invalidating portions thereof, accounting, and determination of the respective interests of the several parties to the action. It was instituted by the filing of a complaint in the Superior Court, Chancery Division, on August 15, 1950, by the plaintiff Isabelle Litcher. The defendants named were the Trust Company of New Jersey, as substituted trustee under the last will and testament of Thomas J. Kavanagh, deceased; Emil W. A. Schumann, as executor of the last will and testament of Emily E. Kavanagh, deceased; Anna Menzer; Michael La Padula; Monsignor John L. McNulty, as President of Seton Hall College; Rev. Lawrence McGinley, as President of Fordham University; Martin Stanton, Director for New Jersey of "The Society for the Propagation of the Faith"; and Theodore D. Parsons, as Attorney-General of the State of New Jersey. By counterclaim and cross-claim of the defendant Michael La Padula, and by the plaintiff's answer thereto, La Padula and the plaintiff effectively aligned themselves

as the moving parties in the proceedings, against the other defendants. The Superior Court, Chancery Division, rendered a judgment against these moving parties on April 14, 1952 and they jointly appealed therefrom to the Superior Court, Appellate Division. Prior to hearing there, we allowed certification upon our own motion.

Thomas J. Kavanagh, whose will is the principal source of this litigation, died a resident of the County of Hudson in this State on February 23, 1948, unmarried and without issue. His will was admitted to probate in the former Prerogative Court on March 28, 1938 and letters testamentary were thereon issued to the New Jersey Title Guarantee & Trust Company, executor. On or about June 9, 1939 the defendant Trust Company of New Jersey was appointed substituted trustee under the will of Thomas J. Kavanagh, deceased.

It appears to be uncontroverted that the testator was survived by one brother, Harry W. Kavanagh, and three sisters, Isabella T. (Mrs. Michael La Padula), Emily E., and Anna Matilda (Mrs. William Menzer), and that Henry M. Kavanagh, testator's father, predeceased him. It also appears to be uncontroverted that the brother Harry W. Kavanagh died in Jersey City, New Jersey, in 1942; that testator's sister Emily E. Kavanagh died in Jersey City, New Jersey, on February 28, 1949, testate, unmarried and without issue; that testator's sister Isabella T. Kavanagh La Padula died in Nassau County, New York, on or about February 3, 1948. It is stipulated that testator's sister Anna Matilda Menzer died on July 10, 1952 during the pendency of this appeal. The plaintiff Isabelle Litcher and the defendant Michael La Padula assert that they are entitled to maintain these proceedings by virtue of their respective interests in the estate of or their respective relationship to one or more of the now deceased brother and sisters of the testator.

This action was instituted by Isabelle Litcher by the filing of a complaint in the Superior Court, Chancery Division, on August 15, 1950 against the defendants hereinbefore named.

As recited above, she and the defendant Michael La Padula by various pleadings in effect joined together in the proceedings against the other defendants. The majority of the defendants answered, denying the allegations of the moving parties and leaving them to proof, except for the defendant trustee and the defendant Rev. McGinley, President of Fordham University, who admitted certain of the factual allegations. It does not appear that the defendant Anna Matilda Menzer (now deceased) and the defendant Attorney-General of the State of New Jersey answered or otherwise participated in the proceedings in the court below.

The specific relief sought by the moving parties included construction of the will of Thomas J. Kavanagh, deceased; declaration that he died intestate as to the income from his residuary estate, declaration that paragraphs Nineteenth and Twentieth of his will were void; direction that the trustee render its final account; and that the court determine and adjudge the proportionate distribution to be made to the parties in interest in the testator's estate. The record indicates that the final hearing proceeded upon the premise that the determination of the matters of construction of the will of Thomas J. Kavanagh, deceased, would be dispositive of the action. After final hearing the Superior Court, Chancery Division, entered final judgment construing the will in a manner opposed to the contentions of the moving parties, denying all of the incidental relief sought by them, making various allowances of counsel fees to the respective parties to be paid from the *corpus* of the testator's residuary estate, but ordering that the taxed costs be paid by the plaintiff and the defendant La Padula. The plaintiff and said defendant appealed from the whole of said judgment. For convenience during the course of the remainder of this opinion the plaintiff and the defendant La Padula will be adverted to as the appellants; unless otherwise noted, the other parties to the appeal will be referred to as the respondents.

The principal questions involved on this appeal are: (1) whether paragraphs Nineteenth and Twentieth of the testator's will are void (a) by reason of delegation of testamentary power, (b) violation of the rule against perpetuities, or (c) indefiniteness; and (2) whether the testator died intestate as to surplus income earned on the residuary estate. The remaining questions involved are directed chiefly to the portion of the judgment ordering the appellants to pay taxed costs and to the *quantum* of allowance of counsel fee to the appellants.

Thomas J. Kavanagh's will was holographic. It was made by him on June 3, 1927, apparently without legal assistance. In order to express in understandable vein our conclusions on the principal issues of this case it is incumbent upon us to recite more at length than is our wont the testamentary scheme effected by him. In paragraph First he ordered the payment of debts, funeral expenses and all other testamentary expenses; paragraphs Second to Ninth, inclusive, contained specific bequests of money or of personal effects and jewelry to various designated charities and members of his family. Paragraphs Tenth to Twentieth, inclusive, dispose of the testator's residuary estate as follows:

"TENTH: After all the above named legacies have been paid and settled, I give and bequeath all of the balance, residue and remainder of my estate, to my Executors and Trustees or both, to have and to hold the same in trust for the following uses and purposes.

ELEVENTH: Out of the income of my estate, I order that the sum of One Hundred (100) Dollars per month, be paid unto my father, either monthly or quarterly as he may decide, during his lifetime, for him to use as he may decide for his personal pleasure and comforts.

TWELFTH: To my sister, Mrs. Michael LaPadula (Isabella T. Kavanagh) as she now being married and provided for, I bequeath the sum of Nine Hundred (900) Dollars per year, not to exceed Twenty Years, for her personal use and comfort.

THIRTEENTH: To my sister Mrs. William Menzer (Anna Matilda Kavanagh) being that she is married and provided for, I bequeath the sum of Nine Hundred (900) Dollars per year, for a period not to exceed Twenty Years for her personal use and comfort.

FOURTEENTH: To my sister Emily E. Kavanagh I order and bequeath that the sum of Fifteen hundred (1500) Dollars a year be

paid to her during her life, provided she does not marry if she does then her share is to be identical in every respect from the date of her marriage, as her other two sisters mentioned in paragraphs Twelve and Thirteenth, and in order that this is clearly understood the years before marriage are to be deducted from the twenty years, in other words—if she has been receiving her yearly equity for 5 yrs. before her marriage, the sum of Nine hundred (900) Dollars commences then and runs for only 15 yrs. longer, as I feel I must be fair, just and honest to them all.

FIFTEENTH: To my brother Harry W. Kavanagh I order and bequeath that the sum of Twelve hundred (1200) Dollars per year be paid to him in quarterly payments, for a period not to exceed twenty years, for him to use for his personal comfort and pleasure as he himself may decide.

SIXTEENTH: In making all of the above bequests and legacies, I do so with the best interest at heart toward all, and after a careful study, planning, and reviewing, and without any less feeling of love and devotion toward one more than another.

By limiting the time it remains in force, I feel that they are all well fixed in life, and this money set aside by them yearly and invested will be and provide for them later in life, unless through some unforeseen circumstance they may be compelled to use it yearly.

SEVENTEENTH: Should any one of the beneficiaries mentioned herein, be dissatisfied, and contest the validity of this Last Will and Testament, at any time, then and in that case, the one or ones so doing, are to forfeit his, hers or their share and bequest, under this Will, and his, hers, or their bequest, reverts back and becomes part of my residuary estate, as follows later in this document.

EIGHTEENTH: In the event of the death of any beneficiary herein named, any bequest made to that beneficiary his, hers, or their share, reverts back to my estate.

NINETEENTH: When all payments, bequests, legacies and etc., have been finally paid and no further payments are to be made under the terms of this will as mentioned in the previous sections, then what principal remains of the entire estate, I order that same be divided according to method outlined herewith and following, that is

TWENTIETH: A committee of not more than seven (7) nor less than (5) be selected and appointed, two of whom if living to be my brother or sisters, one the President of Seton Hall College, (R. C.) South Orange, New Jersey, one the President of Fordham University (R. C.) Fordham, N. Y., balance selected by executors or trustee, and this committee is to divide the principal as follows:

1st: Endow a chair of Public Speaking and to be free to students, and to be known as Thomas J. Kavanagh chair of Public Speaking, or a name that conveys the same meaning.

2nd: Set aside a sufficient fund to pay for and educate a young man for the priesthood.

3rd: Donate One thousand (1000) for the Roman Catholic missions.

*4th*: Set aside a fund to educate one young man in College free, same to be given to a worthy young man who has the ambition, but whose parents cannot afford to pay his way through, when one graduates another can be started on his college course, and to be known as The Thomas J. Kavanagh Scholarship.

*5th*: Any balance still remaining and not set aside for any direct purpose, is to be used to help the poor and unfortunates and relieve or help relieve those in poverty or distress and provide them with as much of the comforts of life as is possible, but must not be used for gain or profits as it is my intention and desire, that all I have had of this world's goods in comfort and pleasure, were given me by God Almighty only as a trust, to be returned back and to help those who in this life have not been so blessed as I."

In approaching problems relating to the validity of interests in an estate created by will, including problems such as are presented in this category by the questions involved in this appeal, it is necessary first to construe the will; having arrived at a true construction of the will, *i. e.*, an interpretation of the intent expressed by the testator through the medium of the phraseology of the instrument, it then devolves upon the court to render its judgment whether that testamentary expression is valid when measured by the pertinent rules of law. *Burlington County Trust Co. v. Di Castelcicala*, 2 *N. J.* 214, 218 (1949).

What is the basic testamentary scheme exhibited by the will of Thomas J. Kavanagh? In paragraphs First through Ninth, inclusive, there were the fairly common provisions for payment of debts and testamentary expenses and specific bequests of sums of money and other personal property; in paragraphs Tenth through Twentieth, inclusive, there exists a plan of disposition of testator's residuary estate. Basically, the plan exhibited is a devise and bequest of the entire residuary estate (paragraph Tenth) to the trustee, in trust for specified uses and purposes detailed in the subsequent paragraphs of the will. There then follows (paragraph Eleventh) an instruction to pay from income of the estate the sum of $100 per month to testator's father for life obviously an income annuity, and (paragraphs Twelfth through Fifteenth) provision for payment of sums of money

to each of testator's named brother and sisters annually for 20 years or (paragraph Eighteenth) until the death of each respectively prior to the end of the 20-year period, in which event the share "reverts back to" testator's estate. After the termination of these payments, distribution of the entire estate then remaining is directed to be made by the trustee for charitable purposes (paragraphs Nineteenth and Twentieth).

The foregoing recital is necessary to gain the perspective requisite for a study of the questions involved on this appeal.

Our first investigation is as to whether the interests of the residuary charitable beneficiaries were vested or contingent. The effect of the pertinent portions of the appellants' arguments is that the provisions of paragraphs Nineteenth and Twentieth of the Kavanagh will, providing as they do the direction to divide the remaining principal of the estate "in the future," make the gift to charity a future one. However, the appellants overlook the complete rule of law in this respect, and fail to apprehend the intent of the testator. The pertinent rule has been expressed by the courts of this State to be that a direction to divide being future the gift is future, but that this rule does not apply when the gift is postponed solely for the convenience of the estate. *Cranstoun v. Westendorf*, 91 *N. J. Eq.* 34, 37 (*Ch.* 1919). This is long settled law. In *Post v. Herbert's Executors*, 27 *N. J. Eq.* 540, 543, 544 (*E. & A.* 1876), the former Court of Errors and Appeals expressed these principles through Chief Justice Beasley as follows:

"The rule first stated, that where a legacy is given to a person when a future event happens, the legacy will be contingent until the occurrence of such event, is, like all other similar rules applicable to wills, a mere judicial exposition of the natural meaning of a certain form of expression. It is not an artificial contrivance which, when present, is to have a supreme effect, but is a rule simply because the phrases in question, considered intrinsically, and without qualification *ab extra*, import a definite testamentary purpose. The phraseology has received its accepted interpretation, because it is supposed that such interpretation will carry out the view of the

testator. The consequence is, the rule is always subject to be modified or abrogated by the conditions of the case to which it is applied; and thus a number of admitted exceptions to it have supervened.

And it seems to me the present case is very clearly embraced in one of such exceptions. The rule and the exception to which I now refer, are very distinctly stated and explained by Vice-Chancellor Wigram, in the case of *Packham v. Gregory* 4 *Hare* 398. His words are: 'If there is a gift to a person at twenty one, or on the happening of any event, or a direction to pay and divide when a person attains twenty one, there, the gift being to persons answering a particular description, if a party cannot bring himself within it, he is not entitled to take the benefit of the gift. There is no gift in those cases, except in the direction to pay, or in the direction to pay and divide. But if, upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the benefit of the estate, the same reasoning has never been applied to the case. The interest is vested notwithstanding, although the enjoyment is postponed.' " (*Pages* 543, 544.)

 In the present case there is no doubt that the testator's words vested the residuary estate in the trustee for the purposes expressed in paragraph Twentieth of his will, at the time of his death, subject to postponement of enjoyment for the convenience of his estate, namely, to permit the "letting in" of the interests of the annuitants to protect the full payment of their annuities. This plan appears to be in full accord with the settled principles expressed in the *Post* case, *supra,* and prevents the *inconvenience* to the estate which would have been occasioned had the charitable distribution been made and insufficient funds retained for the payment of the annuities, a result which occurred in *Liberty Title and Trust Co. v. Stevens,* 115 *N. J. Eq.* 506, 514–515 (*Ch.* 1934), affirmed *per curiam* 117 *N. J. Eq.* 404 (*E. & A.* 1935), where the residuary charities were faced with contribution to satisfy the annuities created under a less comprehensive will. These conclusions are borne out by an examination of the nature of the payments provided by the will to be made to the testator's brother and sisters. Clearly these are annuities, for an annuity is the right to the payment of a specified sum of money at stated intervals, usually annually or at aliquot parts of a year. 3 *Page on Wills*

(1941), *sec.* 1172, *p.* 476; *cf. Quill v. Schlichter*, 121 *N. J. Eq.* 149, 150 (*Ch.* 1936); *Chemical Bank and Trust Co. v. Barnett*, 114 *N. J. Eq.* 4, 6 (*Ch.* 1933). And these annuities under the Kavanagh will were payable out of *corpus* as well as income. This has already been judicially determined by a final decree of the former Court of Chancery entered on January 9, 1939, as supplemented by an order entered April 10, 1940, in connection with a prior proceeding for construction of this decedent's will. And this is in accord with settled rules of law. An annuity does not fail because net income is insufficient to pay it in full, but is payable out of principal unless the principal is disposed of by the will in such a way that the gift thereof is on an equality with the annuity or has priority over it, or unless the will shows an intent to pay the annuity out of income alone. 3 *Page on Wills* (1941), *sec.* 1173, *pp.* 478–479. *Liberty Title and Trust Co. v. Stevens, supra.* 4 *Pomeroy's Equity Jurisprudence* (1941), *sec.* 1134, *pp.* 366–368. In the present case the testator expressly directed the annuity to his father to be paid from income, but did not so limit the annuities payable to his brother and sisters, respectively. The intent to require full payment of these annuities to the brother and sisters, even at the expense of *corpus*, is obvious in the provisions for reversion to the estate (paragraph Eighteenth), and delay in distribution to the charitable beneficiaries (paragraph Nineteenth). *D'Arcangelo v. D'Arcangelo*, 137 *N. J. Eq.* 63 (*Ch.* 1945); *Paterson National Bank v. Mosher*, 135 *N. J. Eq.* 429, 433–434 (*Ch.* 1944); *Rutherford National Bank v. Black*, 133 *N. J. Eq.* 306, 308 (*Ch.* 1943); *Byrne v. Byrne*, 123 *N. J. Eq.* 6, 15 (*Ch.* 1938). See also 4 *Pomeroy's Equity Jurisprudence* (1941), *sec.* 1134, *p.* 368.

Thus, we have a basically valid testamentary scheme that on its face vests the residuary estate in a trustee for certain ultimate purposes, but postpones the performance (enjoyment by the residuary beneficiaries) thereof for the convenience of the residuary estate in payment of annuities charged against it.

This brings us to the next question, whether the surplus income of the residuary estate is disposed of by the will.

On this question we are of the opinion that the testator intended surplus income of the estate to be accumulated and added to *corpus*. This plan is exhibited in the provisions for payment of $100 per month out of income to testator's father (paragraph Eleventh), the provisions for payment of the annuities to testator's brother and sisters hereinbefore discussed (paragraphs Twelfth through Fifteenth, inclusive), the testator's expression of purpose (paragraph Sixteenth), and the provisions for reversion to the residuary estate (paragraphs Seventeenth and Eighteenth). That he intended these accumulations of income to be added to and become part of the *corpus* is plainly indicated by his use of the words "principal of the entire estate" in paragraph Nineteenth.

This conclusion is supported by authority. Where the gift (*i. e.*, to the annuitants) is of a portion of income, "the accumulations, if any, belong to testator's estate," 3 *Page on Wills* (1941), *sec.* 1171, *p.* 475. See *McKnight's Executors v. Walsh*, 24 *N. J. Eq.* 498 (*E. & A.* 1873); *Cox v. Wills*, 49 *N. J. Eq.* 573 (*E. & A.* 1892). There being no directions in a will for accumulation of income to increase the *corpus* of a specific fund, the income accruing is undisposed of and falls into the residue; "a residuary bequest of personal estate carries, not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of. * * *" *Sandford v. Blake*, 45 *N. J. Eq.* 247, 251 (*E. & A.* 1889). And in *Bye v. Strasbourg*, 102 *N. J. Eq.* 300, 301 (*E. & A.* 1928), it was declared that

"* * * although there was no specific direction for the accumulation of income to increase the *corpus* of the fund, such income when not otherwise disposed of would fall into the residuary estate and be distributable as a part of the *corpus* at the termination of the trust among those who were entitled under the will to share in the *corpus*. In other words, that the fact of the failure of the testator to make any specific disposition thereof would not produce an intestacy."

78

We thus find a testamentary scheme to establish the residuary estate as an estate for accumulation for a period of 20 years (or the life of testator's father) at most, but vested in the trustee on testator's death for the residuary purposes.

What was the nature of these residuary purposes? They were all charitable. The test in this respect was expressed by Mr. Justice Heher in *Wilber v. Owens*, 2 *N. J.* 167, 174 (1949) as follows:

"A trust is charitable if the subject property is devoted to the accomplishment of purposes which are beneficial or may be supposed to be beneficial to the community. This is the prime distinction between private trusts and charitable trusts. The question is whether the accomplishment of the purpose is of such social interest to the community as to justify the dedication of the property to that purpose in perpetuity. Are the persons to benefit of a sufficiently large or indefinite class to give rise to community interest in the trust? Will the trust in operation advance the religious, educational, eleemosynary, governmental or other charitable interests of the community? *Woodstown National Bank v. Snelbaker*, 136 *N. J. Eq.* 62, (*Ch.* 1944) ; affirmed, 137 *N. J. Eq.* 256 (*E. & A.* 1945) ; *Scott on Trusts, sections* 348, 364, 368." (*page* 174.)

Clauses 1st and 4th of paragraph Twentieth of the Kavanagh will are trusts for general educational purposes; clause 2nd provides for religious education. It is settled that such trusts are charitable. *Wilber v. Owens, supra* (2 *N. J.*, at *p.* 174).

Clause 3rd of paragraph Twentieth was a bequest of $1,000 for Roman Catholic missions. Such gifts are charitable. See *MacKenzie v. Trustees of Presbytery of Jersey City*, 67 *N. J. Eq.* 652, 666 (*E. & A.* 1905) ; 10 *Am. Jur., Charities, secs.* 55, 56, *pp.* 624, 626. It is argued by the appellants that this bequest is void for ambiguity in that the testator failed to define the subject of the "1000" as dollars. There is no merit in this argument. Viewed in the context of the entire instrument the testator's obvious intent was to make a bequest of 1000 dollars.

Clause 5th of paragraph Twentieth provided for the application of any remaining funds of the residuary estate "to help the poor and unfortunates and relieve or help re-

lieve those in poverty or distress." This also is a charitable trust. *Hesketh v. Murphy*, 36 *N. J. Eq.* 304 (*E. & A.* 1882); *Kitchen v. Pitney*, 94 *N. J. Eq.* 485 (*E. & A.* 1923); *Bloomer v. Bloomer*, 98 *N. J. Eq.* 576 (*Ch.* 1925), affirmed per curiam 100 *N. J. Eq.* 361 (*E. & A.* 1926). 3 *Page on Wills* (1941), *sec.* 1218, *pp.* 568, 570; 3 *Scott on Trusts* (1939), *sec.* 348.3, *pp.* 1925–1930.

 The residuary charitable trusts above discussed are attacked by the appellants on two further grounds: (a) that the testator made an invalid delegation of testamentary power to make the bequests, and (b) that the several bequests are too vague to be enforceable. The first of these propositions falls with a mere reference to the authorities hereinbefore cited as to each specific category of charitable trust. The disposition is provided for by the will and the designation of beneficiaries alone is left to the trustee and the advisory committee to be appointed by it. The second of these propositions falls with the first. It is settled law in this jurisdiction that "courts of equity uphold gifts to a charitable purpose if there is a trustee with power to designate the particular persons to be benefited thereby." *Kitchen v. Pitney, supra* (94 *N. J. Eq.*, at *p.* 489). *Hesketh v. Murphy*, 36 *N. J. Eq.* 304, 313 (*E. & A.* 1882).

The sum and substance of the foregoing analysis of the will of Thomas J. Kavanagh, deceased, is that there is provided thereby a residuary trust for accumulation for charitable purposes to be distributed at the death of testator's father, at the expiration of 20 years after testator's death, or upon the death of the last surviving brother or sister of the testator prior to the expiration of 20 years after testator's death, whichever event may first occur, the residuary estate being vested in the trustee for the charitable purposes at the time of testator's death. The final query is whether this scheme of testamentary disposition is violative of the rule against perpetuities.

 The rule against perpetuities in this State is that "no interest is good unless it must vest, if at all, not later

than twenty-one years after some life in being at the creation of the interest." *Burlington County Trust Co. v. Castelcicala, supra* (2 *N. J.*, at *p.* 220). It is directed solely against unlawful postponement of the vesting of estates; it is the "uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment" that postpones the vesting of an estate in remainder. *Hopper v. Gurtman*, 126 *N. J. L.* 263, 272 (*E. & A.* 1941). See *Lembeck v. Lembeck*, 73 *N. J. Eq.* 427, 429 (*Ch.* 1907), affirmed 74 *N. J. Eq.* 848, 849 (*E. & A.* 1908). *Cf. Canda v. Canda*, 92 *N. J. Eq.* 423, 425 (*E. & A.* 1921).

Further, it is commonly said that gifts to charities are not subject to the rule against perpetuities. *Gray, The Rule against Perpetuities* (1942), *sec.* 590, *p.* 567. *Guaranty Trust Co. of N. Y. v. N. Y. Community Trust*, 141 *N. J. Eq.* 238, 247 (*Ch.* 1948), affirmed *per curiam* 142 *N. J. Eq.* 726 (*E. & A.* 1948).

But the appellants assert that public policy requires the application of the rule be kept rigidly within bounds and not extended beyond its plain limits, one of these limits being that an estate for accumulation must *vest* within the prescribed period, and not merely that it *may* vest within that time. *First Camden, &c., Trust Co. v. Collins*, 114 *N. J. Eq.* 59, 61 (*E. & A.* 1933). In the *First Camden, &c., Trust Co.* case, *supra*, the law was so expressed, but in that case the court determined that not only did the will there under review require the subsequent creation of a corporation to accept the fund in question, but that the charity itself must wait at least 84 years; the court determined that under the circumstances peculiar to that case title in the fund would not vest until that future corporation was formed. As Gray expresses it:

"* * * While it is true that the nature of charitable trusts makes them inalienable, and therefore perpetuities, in the natural sense of that term, it is by no means a necessary incident of charitable trusts that they should be allowed to begin in the remote future; or, in other words, that they should be exempt from the operation of

the Rule against Perpetuities." *Gray, The Rule against Perpetuities, supra, sec. 591, p. 569.*

Compare *MacKenzie v. Trustees of Presbytery of Jersey City, 67 N. J. Eq. 652, 669 (E. & A. 1905).*

 However, these principles find no application here. As we have demonstrated, *ante,* the estate vested at the time of the testator's death, and even if we were to view the will as providing for the vesting of the estate in the trustee for distribution to charitable beneficiaries at the end of the period hereinbefore described, the charitable trust would still vest within the period allotted by the rule against perpetuities, for "the law does not permit a charitable trust, capable of execution, to remain unexecuted for want of a competent trustee" and will require the trustee to effect distribution in accordance with the terms of the trust. *Conway v. Third National Bank, &c., Camden,* 118 *N. J. Eq.* 61, 66–67 *(Ch.* 1935), affirmed 119 *N. J. Eq.* 575 *(E. & A.* 1936). The mere fact that the powers of the trustee and its advisory committee are in a sense discretionary with respect to the particular distribution to be effected does not invalidate the trust. Where the powers are coupled with trust or duty the court will enforce a proper and timely exercise thereof. *Read v. Patterson,* 44 *N. J. Eq.* 211, 219 *(E. & A.* 1888). See also *Hersh v. Rosensohn,* 127 *N. J. Eq.* 21, 22–23 *(E. & A.* 1940).

We therefore conclude that the testamentary scheme was not violative of the rule against perpetuities.

 On the questions involved concerning costs and counsel fees, it will serve no purpose to reiterate the settled rules relating to the allowance of counsel fees and taxation of costs in proceedings of this nature. This was not an ordinary case for the construction of the will, but rather an adversary proceeding to obtain a portion of the estate in which the moving parties' viewpoint did not prevail. We are satisfied upon our examination of the record and the questions of law involved in this matter that there was no

abuse of discretion by the trial court in this regard under the circumstances of this case and therefore the judgment of the trial court on these matters will not be disturbed.

We find no merit in the remaining questions involved.

For the reasons expressed in this opinion the judgment of the Superior Court, Chancery Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.