**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2068-23

MICHAEL A. GALLARDO, ESQ.,

    Plaintiff-Respondent,

v.

JOSEPH A. GINARTE, ESQ.,
and GINARTE GALLARDO
GONZALEZ & WINOGRAD,
LLP, d/b/a GINARTE
GONZALEZ WINOGRAD, LLP,

    Defendants-Appellants.

_____

        Argued March 13, 2025 – Decided March 20, 2025

        Before Judges Mawla, Walcott-Henderson, and Vinci.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2267-23.

        Domenick Carmagnola argued the cause for appellants (Carmagnola & Ritardi, LLC, attorneys; Domenick Carmagnola, of counsel and on the briefs; Sarah E. Westaway, on the briefs).

Robert H. Solomon argued the cause for respondent (Nagel Rice LLP, attorneys; Neil Mullin and Virginia A. Pallotto, on the brief).

PER CURIAM

Defendants Joseph A. Ginarte, Esq. and Ginarte Gallardo Gonzalez & Winograd, LLP d/b/a Ginarte Gonzalez Winograd, LLP (Ginarte LLP) appeal from the October 17, 2023 order denying their motion to compel arbitration and the January 30, 2024 order denying their motion for reconsideration. We affirm.

I.

In 1982, Ginarte founded Ginarte LLP. On November 8, 1991, Ginarte and a former partner entered into a partnership agreement (the Partnership Agreement). In relevant part, the Partnership Agreement provides:

> Any controversy or claim arising out of this [Partnership] Agreement shall be settled by arbitration (except as otherwise noted in this [Partnership] Agreement) in accordance with the Rules of the American Arbitration Association and judgment upon the award rendered may be entered in any [c]ourt having jurisdiction.

In August 2003, Ginarte LLP hired plaintiff Michael A. Gallardo, Esq. as an associate attorney. On August 1, 2007, plaintiff was promoted to junior partner, and Ginarte and plaintiff executed an addendum to the Partnership

Agreement. Plaintiff contends the addendum did not attach the Partnership Agreement, nor did he ever receive a copy of it.

In 2013, plaintiff was named managing partner of Ginarte LLP. In November 2018, plaintiff and Ginarte executed a partnership interest purchase agreement (purchase agreement). In relevant part, the purchase agreement provides:

> [Ginarte LLP] desires to sell to [plaintiff], and [plaintiff] desires to purchase from [Ginarte], [five percent] of [Ginarte's] interest, pursuant to the terms and conditions set forth herein and in the [Partnership Agreement]. This transaction shall dilute the ownership interest of [Ginarte] in [Ginarte LLP] to [ninety-five percent].

In May 2019, plaintiff and Ginarte executed a partners' certificate to receive a loan. The partners' certificate provides, in relevant part:

> The [p]artnership does not have a formal Limited Liability Partnership Agreement as in effect on the date hereof.
>
> . . . .
>
> The execution, delivery[,] and performance of the Loan Documents by the [p]artnership will not violate any provision of the Certificate of Limited Partnership, the . . . Partnership Agreement, [or] any existing law or regulation . . . .

A-2068-23

On February 14, 2023, plaintiff was terminated. He contends he was terminated for protected activity, while Ginarte claims "[a]lthough [plaintiff] was technically designated as a managing partner of the New Jersey office of [Ginarte LLP], the truth is that [plaintiff] had not physically worked in that office since March 2020." The termination letter stated the termination was "pursuant to Article 16 of the Partnership Agreement dated November 8, 1991, as amended by [a]ddendum dated August 1, 2007." Defendants contend following his termination, plaintiff "surreptitiously contacted approximately twelve Ginarte [LLP] clients by telephone in an attempt to convince those clients to switch their matters to [p]laintiff and" his new firm.

On March 3, 2023, plaintiff filed a verified complaint in the Chancery Division alleging defendants retaliated against him for protected activity and sought an order to show cause with temporary restraints. On March 7, defendants' counsel wrote the court asking to be heard before it took any action on plaintiff's application because plaintiff "failed to disclose to the [c]ourt the existence of an arbitration provision in the Partnership Agreement."

On March 8, the court heard oral argument on plaintiff's application for temporary restraints. It entered an order to show cause and imposed certain restraints relating to communications with clients, information on defendants'

website, and the return of plaintiff's personal belongings, among other relief. The court also established a briefing schedule for motions, including defendants' anticipated motion to compel arbitration, and scheduled oral argument for March 23. On March 9, the court entered a consent order modifying the March 8 order "to remove from the briefing and hearing schedule the references to . . . [d]efendants' [m]otion to [c]ompel [a]rbitration, . . . which shall await disposition of . . . [p]laintiff's [m]otion to [d]isqualify [defendants' counsel]."

By March 15, Mazie Slater Katz & Freeman, LLC was substituted as counsel for defendants. On March 15, counsel wrote to plaintiff's counsel:

> [I]t has come to our attention that [plaintiff] has been improperly pressuring clients of [Ginarte LLP] to switch counsel. It is our understanding that [plaintiff] has secretly contacted approximately a dozen clients by telephone at their home and pressured them to change counsel.

Counsel suggested they "attempt to agree upon a neutral letter that can be sent out to all clients for whom [plaintiff] acted as lead counsel." After not receiving a response, on March 17, Ginarte LLP filed a verified complaint in the Chancery Division against plaintiff and his new firm alleging they improperly pressured Ginarte LLP clients to retain plaintiff's new firm. Ginarte LLP sought an order to show cause with temporary restraints.

5

On March 23, the court heard oral argument on Ginarte LLP's application for an order to show cause with temporary restraints. At the beginning of the hearing, the court summarized recent events and communications in the case:

> During the course of the conversation, [the court] thought perhaps there might be an ability to get consent to perhaps send a joint letter to the clients. The parties took some time, and had some discussion, and apparently there[ has] not been an ability to come to a resolution of that. So, . . . all of that discussion was . . . off the record, kind of in the sense of what [the court] guess[es] would be sort of a settlement type situation.
>
> During that time, there were a couple things, however, that did come to pass that [the court] believe[s] . . . and [the court] want[s] to confirm on the record – there had been a previous request that there was going to be a motion filed for the matter to go to arbitration. [The court] believe[s] that it[ has] been established that that[ has] been waived and that arbitration is no longer an issue. Correct?
>
> [DEFENSE COUNSEL]: That[ is] correct, Your Honor.
>
> [PLAINTIFF'S COUNSEL]: Correct, Your Honor.
>
> THE COURT: Okay. And then, secondly, that the matter belongs in the [L]aw [D]ivision, and that[ is] with the consent of all parties.
>
> [PLAINTIFF'S COUNSEL]: With our consent. Yes, Your Honor.
>
> [DEFENSE COUNSEL]: Right, Your Honor.

6

Both actions were then transferred to the Law Division. On March 29, Ginarte LLP dismissed its complaint against plaintiff and his new firm without prejudice so all claims could be asserted in the Law Division. Defendants thereafter retained new counsel and, on May 23, filed a motion in lieu of an answer to compel arbitration, among other relief.

On October 11, the court heard oral argument on defendants' motion to compel arbitration and denied the motion in an oral opinion. The court found:

> The facts are . . . there did exist, or there does exist, a document . . . referred to as [the P]artnership [A]greement, and the existence of that document certainly was called into question, and additional documents that have been produced, and that will be those documents related to the loan, the certificate which was submitted. The documents refer to . . . the [P]artnership [A]greement in the sense that it notes that one does not exist. Certainly there ha[s] been other . . . information presented to [t]he [c]ourt, but the existence of an arbitration clause, and whether or not it is binding on [plaintiff] is questionable . . . . The facts are that there are no records before this court showing that there was any compliance under the Federal Arbitration Act [(FAA)], [9 U.S.C. §§ 1-16], and in so saying there[ is] nothing before [t]he [c]ourt that establishes that [plaintiff] . . . agreed to an arbitration clause. . . . The [c]ourt cannot overlook the colloquy before [the Chancery judge], regardless of whether it involved a case where [plaintiff's] current firm . . . was present or not. The facts are that there was a question asked by [t]he [c]ourt, are you waiving arbitration? And the response was . . . colloquially, yes, and the judge . . . relied upon that, allowed certain things to

A-2068-23

happen, and the matter was transferred to the Law Division based on representations made at that time.

It[ is] not for [t]he [c]ourt to inquire and ask, well, are you only waiving it as to this, are you only waiving it as to that? The . . . waiver was made[,] and the case was moved, and so this court is not moving this matter into arbitration, the matter will proceed.

On October 17, the court entered an order denying the motion for the reasons set forth on October 11. On November 6, defendants moved for reconsideration contending the court failed to consider the Cole[1] factors to determine whether there was an express waiver of arbitration. On January 26, 2024, after hearing oral argument, the court entered an order denying defendants' motion for reconsideration supported by an oral opinion. It found:

[E]ven . . . in Atalese,[2] in Cole[,] and in all the other cases that cite to Cole and the factors, there[ is] never a situation presented in any of those cases where the [c]ourt had to consider an express waiver . . . .

None of those cases dealt with that. None of the cases dealt with a fact pattern or a scenario like the one we have here where there is an express waiver.

. . . .

So with regards to [the court's] ruling as to the existence of the arbitration agreement[,]

---

[1] Cole v. Jersey City Med. Ctr., 215 N.J. 265 (2013).

[2] Atalese v. U.S. Legal Serv. Grp., LP, 219 N.J. 430 (2014).

A-2068-23

reconsideration is granted. And at this time, the [c]ourt's position is that there are some questions with regards to [its] existence. But regardless of whether or not there are questions as to the existence of the arbitration agreement, the facts are that there was an express waiver of the right to . . . arbitration in this matter.

The [c]ourt read through the transcript from the proceeding before [the Chancery judge] on March 23[]. . . .

. . . [The court has] peppered [defense counsel] with questions with regards to whether or not <u>Cole</u> is even applicable in light of the fact that there is an express waiver. . . .

. . . .

And [defense counsel] has argued that . . . there[ is] no prejudice if the [c]ourt were to grant . . . his motion and order that there was no waiver.

After reviewing each of the <u>Cole</u> factors, the court found:

This [c]ourt[,] at this point[,] regardless of what [the <u>Cole</u>] factors are, the facts are that there was an express waiver of arbitration. It was expressed on the record before [the Chancery judge] on March 23[].

. . . .

. . . And this [c]ourt finds that with regards to the issue of waiver, . . . defendants expressly waived arbitration by way of the waiver, by way of the statements made by [defense counsel] before [the Chancery judge] back on March 23[].

9

There is nothing before this [c]ourt to contradict that. And the fact that now the parties are seeking to . . . move this matter to arbitration regardless of the fact that there has not been a lot that has taken place is irrelevant to this [c]ourt. There[ is] nothing for this [c]ourt to believe that at the time it was expressly waived that that was not the intention. So with regards to that issue, reconsideration is denied.

## II.

On appeal, defendants contend: (1) a waiver of arbitration, express or implied, should be assessed under the Cole factors; (2) public policy and precedent strongly support the right to timely retract a waiver of arbitration where a party has satisfied the Cole factors; (3) "[a]bsent a writing or filed order, an express verbal waiver should not carry any more or less . . . significance than an implied waiver"; and (4) counsel's statement on the record did "not formally memorialize a verbal waiver of [d]efendants' right to arbitrate."

Having considered the record, we affirm substantially for the reasons set forth in the court's October 11, 2023, and January 26, 2024 oral opinions. We add the following comments.

We review de novo a trial court's order deciding the legal issue of waiver. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J. Super. 593, 607 (App. Div. 2024). A trial judge's decision on whether to grant or deny a motion for reconsideration is

reviewed for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Under both the FAA and the New Jersey Arbitration Act (NJAA), arbitration is fundamentally a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). Arbitration agreements are subject to customary contract law principles. Atalese, 219 N.J. at 442.

In reviewing orders granting or denying a motion to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). The FAA "and the nearly identical [NJAA], enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (internal citations omitted) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). That preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

"[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173

N.J. 76, 85 (2002)). As such, "generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening [the FAA]." Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 12 (2006) (emphasis omitted) (quoting Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc., 273 N.J. Super. 231, 236 (App. Div. 1994). Arbitration agreements, however, "may not be subjected to more burdensome contract formation requirements than [those] required for any other contractual topic." Martindale, 173 N.J. at 83; Skuse, 244 N.J. at 47; see also Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022) ("[A] court may not devise novel rules to favor arbitration over litigation.").

Like other contractual rights or obligations, "parties may waive their right to arbitrate." Cole, 215 N.J. at 276. A waiver may be express, Wein v. Morris, 194 N.J. 364, 376 (2008), or by implication, Knorr v. Smeal, 178 N.J. 169, 177 (2003). "Waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of [their] legal rights and deliberately intended to relinquish them." Shebar v. Sanya Bus. Sys. Corp., 111 N.J. 276, 291 (1988). "Our New Jersey case law generally does not require prejudice to prove waiver." Marmo, 478 N.J. Super. at 607. The party waiving a known right must do so "clear[ly],

unequivocal[ly], and decisive[ly]." Country Chevrolet, Inc. v. Twp. of N. Brunswick Plan. Bd., 190 N.J. Super. 376, 380 (App. Div. 1983).

The court correctly found defendants expressly waived their right to arbitration. In response to the court's clear, unambiguous question, counsel advised the court defendants waived their right to compel arbitration and "arbitration is no longer an issue." Defendants expressly waived the right to arbitrate clearly, unequivocally, and decisively.

Defendants' claims an express waiver is not binding "[a]bsent a writing or filed order" and counsel's statement on the record did "not formally memorialize a verbal waiver of [d]efendants' right to arbitrate" lack merit. The express waiver was placed on the record in open court; there was no need to further "formally" memorialize it in a "writing or filed order."

We are unpersuaded by defendants' contention an express waiver of the right to arbitration must be evaluated using the Cole factors. In Cole, our Supreme Court "addressed the standard necessary to establish that a party implicitly waived its right to arbitrate" because no court had previously done so. 215 N.J. at 277. The Court held in determining whether a party impliedly waived its right to arbitrate, "we concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute." Ibid.

A-2068-23

The Court identified several factors courts should consider when performing that assessment, which we do not repeat here.  Id. at 280-81.

The court correctly found the Cole factors are not relevant to determining whether a party expressly waived its right to arbitration.  In evaluating an express waiver, it is the nature of the waiver itself that controls.  When, as here, a party clearly, unequivocally, and decisively expresses the intent to waive a known right, the waiver is binding and enforceable.  See Country Chevrolet, 190 N.J. Super. at 380.  There is no need to apply the Cole factors and "concentrate on the party's litigation conduct" when evaluating an express waiver, nor is there any need to find prejudice.  See Marmo, 478 N.J. Super. at 607.

Moreover, defendants' contention an express waiver of an arbitration agreement should be evaluated differently than an express waiver of other types of contractual rights would violate the principle that an arbitration agreement may not be subject to "more burdensome requirements than those governing the formation of other contracts."  Skuse, 244 N.J. at 47 (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)); Martindale, 173 N.J. at 83.  "[A] court must hold a party to its arbitration contract just as the court would to any other kind.  But a court may not devise novel rules to favor arbitration over litigation."  Morgan, 596 U.S. at 418.  Adopting a modified standard for evaluating an

express waiver because public policy favors arbitration would impermissibly subject arbitration agreements to "more burdensome requirements" using a "novel" rule to favor arbitration over litigation.

We are satisfied the court correctly determined defendants expressly waived their right to arbitration and denied the motion to compel arbitration. The court correctly denied the motion for reconsideration for the same reasons.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division